# United States Court of Appeals
## For the First Circuit

No. 17-2065

UNITED STATES OF AMERICA,

Appellee,

v.

SHAWN SAYER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

William S. Maddox, on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, Appellate Chief, and Halsey B. Frank, United States Attorney, on brief for appellee.

February 22, 2018

**TORRUELLA**, **Circuit Judge**.  In 2012, appellant Shawn Sayer ("Sayer") pled guilty to one count of cyberstalking in violation of 18 U.S.C. §§ 2261A(2) and 2261(b)(5).  He commenced his supervised release term in 2016, but it was revoked in 2017 because he violated some of his conditions.  On appeal, Sayer contends that the district court's upwardly-variant sentence following revocation is procedurally and substantively unreasonable.  Moreover, he challenges the district court's imposition of a supervised release term in addition to the statutory maximum term of imprisonment upon revocation.[1]  After careful review, we affirm.

## I.  Background

We briefly summarize the relevant facts and procedural course of this case.[2]

After Jane Doe[3] ended her relationship with Sayer in January 2006, Sayer stalked and harassed her for various years,

---

[1]  The maximum prison term that may be imposed following revocation is set forth at 18 U.S.C. § 3583(e)(3) and is based on the class of the original offense.

[2]  We draw the uncontested facts underpinning Sayer's original sentence from this court's opinion affirming that sentence.  See United States v. Sayer, 748 F.3d 425 (1st Cir. 2014).  The facts regarding Sayer's conduct while on supervised release derive from the Probation Office's Revocation Report, which the district court adopted in its entirety with no objection from Sayer to the information therein.

[3]  As before, we refer to Sayer's victim as "Jane Doe" to preserve

causing her to seek a protective order against him in state court. United States v. Sayer, 748 F.3d 425, 428 (1st Cir. 2014). In the fall of 2008, Sayer started using the internet to induce random third parties to harass Jane Doe. Id. After several unknown, "'dangerous'-looking men" arrived at Doe's house in Maine in October 2008 "seeking 'sexual entertainment,'" she discovered an ad in the "casual encounters" section of Craigslist that showed pictures of her in lingerie, which Sayer had taken while they were dating. Id. The ad described a list of sexual acts she was supposedly willing to perform and provided her address. Id. Jane Doe had not posted the ad, nor authorized Sayer to do so. Id.

The unwanted visits from unknown men persisted until Jane Doe moved to her aunt's house in Louisiana and changed her name, seeking to avoid Sayer's harassment. The visits stopped until August 2009, when, once again, an unknown man showed up at her aunt's home in Louisiana, referring to Doe by her new name, claiming that he had met her over the internet, and seeking a sexual encounter. Id. Jane Doe later found: 1) videos of herself and Sayer engaged in sexual acts on various pornography websites detailing her name and current Louisiana address; (2) a fraudulent Facebook account including sexually explicit pictures of her; and

---

her privacy. Sayer, 748 F.3d at 428 n.1. For the same reason, we will refer to Sayer's second victim as "M.G."

-3-

(3) a fake account on another social network, Myspace, which provided both her old and new names, her Louisiana address, and links to pornography sites hosting sex videos of her.  Id. at 428-429.  After police searched Sayer's home in June 2010, a forensic analysis of his computer showed that between June and November 2009, Sayer had created "numerous fake profiles" on Yahoo! Messenger using a variation of Jane Doe's name.  Id. at 429.  In many cases, "Sayer, posing as Jane Doe, chatted with men online and encouraged them to visit [her] at her home in Louisiana."[4] Id.

In 2012, Sayer pled guilty to cyberstalking.[5]  The district court imposed a prison term of sixty months, the statutory maximum, to be followed by three years of supervised release.

---

[4]  Jane Doe was forced to return to Maine in November 2009, as the men that Sayer sent to the Louisiana residence scared her aunt and cousin, with whom she was staying.  Id.

[5] The indictment encompassed conduct from "about July 2009, the exact date being unknown, until about November 2009," and alleged that the defendant:

> with the intent to injure, harass, and cause substantial emotional distress to a person in another state, namely, Louisiana, used facilities of interstate or foreign commerce, including electronic mail and internet websites, to engage in a course of conduct that caused substantial emotional distress to the victim and placed her in reasonable fear of death or serious bodily injury.

-4-

Sayer commenced his supervised release in February 2016. During the initial supervised release orientation, Sayer identified several goals, including finding full-time employment, saving money, and purchasing a truck. He worked in the school lunch program for the City of Portland while searching for carpentry-related employment.[6] In May 2016, Sayer secured employment with a construction company in the carpentry industry.

In June 2016, the Probation Office filed a petition to modify Sayer's supervised release conditions to add a requirement that he participate in a Computer and Internet Monitoring Program ("CIMP"), which involved partial or full restriction of his use of computers and the internet and required him to submit to unannounced searches of his computer, storage media, and electronic or internet-capable devices. Despite Sayer's opposition, the district court imposed the CIMP condition, explaining that it had inadvertently omitted it at the time of Sayer's original sentencing but that it was warranted considering the "nature and seriousness" of Sayer's underlying offense.

During his supervised release term, Sayer began a relationship with M.G. On October 25, 2016, Sayer called the

---

[6] He secured this employment while serving the final part of his custodial sentence (pre-release) in the Pharos House Residential Reentry Center.

Probation Officer to inform that "things [had gone] sour" with M.G. While Sayer insisted that M.G. "never explicitly asked him to not contact her," he acknowledged that she had blocked communications with him on Facebook and ignored multiple text messages. The Probation Officer encouraged him to stop contacting M.G. During a meeting with Sayer days later, the Probation Officer brought up Sayer's communications with M.G., emphasizing that Sayer was "exhibiting at risk communication that reached an obsessive level." The Probation Officer informed Sayer that his internet access would be restricted for a while to allow the Probation Office to investigate the extent of his communication with M.G.

On November 18, 2016, M.G. denied any issues of harassment and said she and Sayer were "working things out." Hence, on November 29, 2016, the Probation Officer informed Sayer that he would restore his internet access, based on the results of the investigation. The Probation Officer later discovered that Sayer continued to use the internet during his period of restriction as the software installed by the Probation Office had failed to block his access. When confronted, Sayer said that although he had felt "shocked" when he was able to access the internet after being told he would not be able to, he just "went along with it."

In a meeting on January 4, 2017, Sayer and the Probation Officer once again discussed Sayer's communications with M.G., as she had recently requested he "leave her alone." Sayer insisted that his multiple messages were "his way of 'helping' her through periods of depression." He seemed "very bothered" by the breakdown of his relationship and expressed concern for an iPhone and iPad that he had let M.G. borrow and she had not returned. The Probation Officer suggested a mental health assessment, but Sayer said he was "not really that upset." During this meeting, the Probation Officer also discussed nude photos of M.G. in Sayer's cellphone, some in which M.G. was "not looking at the camera and it [was] unclear how aware she [was]." The Probation Officer instructed Sayer to inform M.G. that his cellphone was monitored and other people had access to her photos.

In mid-January 2017, the Probation Office discovered a GPS tracker application in Sayer's cellphone, which Sayer admitted to connecting to the iPad he had lent M.G.[7] The following month, Sayer scheduled a mental health assessment as instructed by the Probation Office, which he referred to as "ridiculous."

---

[7] Sayer alleged that he installed the tracker because he wanted to know whether M.G. had mailed his iPad back. He provided evidence that it had been disabled. From the Revocation Report, it is unclear whether Sayer had previously disabled the tracker of his own volition, or whether he had only done so after prodding by the Probation Office.

In late February 2017, M.G. sought a no contact order regarding Sayer from the Ellsworth, Maine Police Department, and as a result Sayer was verbally instructed to cease all communications with her. On May 8, 2017, M.G. contacted the Probation Office to inform that Sayer had been obsessively contacting her via phone and email. She reported that he called from different numbers and was able to mask his phone number to appear as though another contact was calling. She also reported he emailed her from multiple accounts.

On May 23, 2017, the Probation Office filed a petition to revoke Sayer's supervised release, alleging that Sayer had violated the CIMP condition by opening and using a series of online accounts without prior permission from Probation. Sayer waived the preliminary revocation hearing, and the district court scheduled the final revocation hearing for October 24, 2017. On that day, Sayer waived the right to a hearing and admitted to committing the violations. Specifically, Sayer admitted to: (1) installing twenty-two "spoofing" applications on his phone, which enabled him to place outgoing phone calls under the guise of a different phone number, to call M.G.; (2) downloading twenty unapproved messenger applications; (3) opening 4 different email accounts, 3 of which were never reported to, nor approved by, the Probation Office, and were used to send multiple messages to M.G.;

and (4) creating two dating profiles appearing to resemble M.G., seeking to pose as a representation of her to find out if she was dating other men.

Sayer also accepted the Probation Officer's Revocation Report without any objection to its content, except for a complaint that it omitted some "mutual" communications between M.G. and him. Without any further objection from Sayer, the district court adopted the Revocation Report in its entirety as findings in support of the revocation sentence. While the Guidelines Sentencing Range was five to eleven months, the court ultimately varied upwards to impose a sentence of a twenty-four-month prison term and twelve months of supervised release.

## II. <u>Discussion</u>

"Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." <u>United States</u> v. <u>Flores-Machicote</u>, 706 F.3d 16, 20 (1st Cir 2013). We review sentencing decisions under the United States Sentencing Guidelines ("U.S.S.G.") for "reasonableness, regardless of whether they fall inside or outside the applicable [Guidelines Sentencing Range]." <u>United States</u> v. <u>Turbides-Leonardo</u>, 468 F.3d 34, 40 (1st Cir. 2006). Our "review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it

is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

## A. Procedural Reasonableness of Sayer's Sentence

We must ensure that the district court did not commit any "significant procedural error" to arrive at a sentence. Gall v. United States, 552 U.S. 38, 51 (2007). Examples of this include "failing to calculate (or improperly calculating) the [GSR], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." Flores-Machicote, 706 F.3d at 20 (alterations in original) (quoting Gall, 552 U.S. at 51).

Preserved claims of sentencing error are generally reviewed for abuse of discretion. United States v. Márquez-García, 862 F.3d 143, 145 (1st Cir. 2017). However, when a defendant fails to contemporaneously object to the procedural reasonableness of a court's sentencing determination, we review for plain error. See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). Under the plain error standard, "an appellant must show: '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness,

-10-

integrity, or public reputation of judicial proceedings.'" Márquez-García, 862 F.3d at 145 (alterations in original)(quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Sayer did not raise his procedural reasonableness argument before the sentencing court, so we review for plain error.[8] See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Sayer claims that the district court procedurally erred by failing to adequately explain the rationale for its chosen sentence. The revocation hearing transcript, however, refutes Sayer's argument. The district court's remarks at sentencing made clear that it considered the factors required by 18 U.S.C. § 3583(e), weighed them, and used its discretion to arrive at a reasoned, defensible decision. The court primarily stressed three factors in support of its variant sentence: (1) Sayer's criminal

---

[8] Sayer argues that he properly preserved all of his arguments on appeal. As the transcript of the revocation hearing reflects, Sayer's attorney stated: "I would like to object to the upward variance. I think that is necessary to preserve all of Mr. Sayer's appeal rights." This is insufficient. "A general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings. . . . [A]n objection must be sufficiently specific to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017); see also United States v. Sosa-González, 900 F.3d 1, 4 (1st Cir. 2018) (finding "we object as to the sentence because we believe it is unreasonable" to be insufficient to preserve a procedural objection). In any event, even reviewed under the abuse of discretion standard, Sayer cannot meet his burden.

history and the similarity of Sayer's conduct on supervised release to the conduct for which he had been convicted; (2) Sayer's unwillingness to accept responsibility; and (3) the need to protect the public from further crimes.

First, the court expressed that Sayer's behavior while on supervised release "demonstrates that he has continued with the same sort of resistance to authority and compulsive thinking that resulted in his underlying cyberstalking conviction." It explained that although Sayer's conduct while on supervision did not "rise to the level" of the conduct for which he was originally convicted, "it certainly hearken[ed] toward it." Moreover, the court noted that Sayer had a Criminal History Category of III and emphasized that "more important than that number is the nature of his history," which is a:

> chronic pattern of stalking . . . and behavior involving
> violations of protective orders and bail orders which
> . . . [all] paint[] a picture . . . of a defendant who
> is absolutely resistant to court order, court
> supervision and respecting the rule of law as it pertains
> to . . . employing cell phones and the Internet to
> interfere with others.

As to Sayer's unwillingness to accept responsibility, the court emphasized that Sayer had described the Probation Officer's order that he receive a mental health assessment as "ridiculous" and that "today even I hear him blaming his relationship with M.G. for his problems . . . as opposed to

-12-

accepting full responsibility."  Moreover, the court stressed the effect of Sayer's conduct on others and explained: "[t]o some degree the analogy to a drug addict is not appropriate.  This is not a situation where he is using illegal substances to his own detriment only.  This is a situation in which his behavior harms others."  Thus, the court ultimately concluded that: "an upward variant sentence is essential, because I have before me a defendant who cannot control his behavior after all this history and for that reason poses what I regard to be a substantial risk of harm to the public."

This explanation was adequate, more than enough to defeat Sayer's procedural challenge under both the plain error and abuse of discretion standards.  Sentencing courts need not recount every detail of their decisional processes; identification of the "main factors behind [the] decision" is enough.  United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015).  And although Sayer contends that the court did not sufficiently explain why it rejected his arguments for a lower prison term, courts are not required to specifically explain why they rejected a particular defense argument in favor of a lower sentence.  See id. at 167 (holding that while a "sentencing court may have a duty to explain why it chose a particular sentence, it has 'no corollary duty to

explain why it eschewed other suggested sentences'" (quoting United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014))).

In any case, the court did explain that although it had considered Sayer's progress while on supervised release, it "pale[d] next to the continued absence of insight on his part as to the type of thinking and the type of behavior which is unlawful and is harmful, and it's harmful to other people, not just to him." Hence, the district court's explanation of its variant sentence was sufficient, and we discern no error, much less plain error.

## B. Substantive Reasonableness of Sayer's Sentence[9]

"[I]f the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable." United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015). A sentence is substantively reasonable so long as the sentencing court has provided a "plausible sentencing rationale" and reached a "defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008). In assessing the substantive reasonableness of a sentence, this court should "take into account the totality of the circumstances, including the extent of any variance from the Guidelines [Sentencing] [R]ange." United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (quoting Gall, 552 U.S.

---

[9] Sayer claims this issue should be reviewed for abuse of discretion, and the government does not contest it.

at 51). "[T]he greater the variance, the more compelling the sentencing court's justification must be." United States v. Vázquez-Vázquez, 852 F.3d 62, 67 (1st Cir. 2017) (quoting United States v. Guzmán-Fernández, 824 F.3d 173, 178 (1st Cir. 2016)).

Sayer's violation while on supervised release was a Grade C violation.[10] Because Sayer had a Criminal History Category of III, the Guidelines Sentencing Range of imprisonment was five to eleven months. By imposing an imprisonment term of twenty-four months on revocation, the district court varied upwards by thirteen months. Sayer argues that his sentence is longer than necessary, and therefore substantially unreasonable because the court: (1) "failed to calibrate the decisional scales" by not accounting for "obvious mitigating factors"; and (2) left no room for harsher sentences for those with higher Criminal History Categories and more serious violations.

Sayer's arguments are without merit. To begin with, the district court clearly stated that it considered the sentencing factors set forth in 18 U.S.C. § 3553(a), including "Sayer's

---

[10] The Sentencing Commission's policy statement divides conduct that violates conditions of supervision into three categories: Grade A, B, and C violations. U.S.S.G. § 7B1.1(a). There are two types of Grade C violations: "(A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." U.S.S.G. § 7B1.1(a)(3)(emphasis added).

-15-

personal history and characteristics" and "the need for the sentence imposed to . . . avoid unwanted sentencing disparities." See United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014) (noting that a judge's statement that he has considered all of the § 3553(a) factors is entitled to significant weight). Moreover, the court adopted the Revocation Report, which mentioned the mitigating factors that Sayer refers to, as findings of fact in support of the sentence that it would impose. Finally, the district court even expressly mentioned the "progress" that Sayer achieved while on supervised release, but ultimately concluded that it "pale[d]" compared to his harmful thinking and behavior. Hence, it is evident that the district court considered all the factors it was required to.

In essence, then, Sayer's challenge is directed at the sentencing judge's weighing of the factors that affect sentencing. He understands that the district judge should have given certain mitigating factors greater significance. However, although the district court must consider a "myriad of relevant factors," the weighing of those factors is "within the court's informed discretion." Clogston, 662 F.3d at 593. Moreover, the reasons cited by the district court and described above, including Sayer's extensive criminal history and the seriousness of his offenses, his proclivity upon release towards the type of conduct for which

-16-

he had been convicted, his unwillingness to accept responsibility, and the need to protect the public from further crimes, constitute a "plausible rationale" for a "defensible" sentence. See Martin, 520 F.3d at 91, 98. And while Sayer argues that the sentence imposed did not leave room for harsher sentences for those with higher Criminal History Categories and more serious violations, it is evident from the hearing transcript that the sentencing judge considered Sayer's criminal history and the nature of his violations to be serious enough to warrant the sentence imposed. See Clogston, 662 F.3d at 592 ("There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."). Thus, considering the totality of the circumstances, we find the district court's sentence to be substantively reasonable and not an abuse of discretion. [11]

## C. Sayer's Additional Term of Supervised Release upon Revocation

Finally, Sayer argues for the first time on appeal that the district court erred by imposing a term of supervised release in addition to the statutory maximum term of imprisonment upon revocation. He contends that because the court sentenced him to

---

[11] We have reviewed the cases Sayer cited in his briefs and in a post-argument letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), but they fail to persuade us to the contrary. They are either distinguishable, lacking a record from which the appellate court could have deciphered a sentencing rationale, or inapposite.

the statutory maximum imprisonment term on revocation, it could not also impose an additional term of supervised release. He bases this argument on the Probation Officer's erroneous paraphrasing of U.S.S.G. § 7B1.3(g)(2) in the Revocation Report[12] and several cited cases that imposed a statutory maximum sentence on revocation but no additional term of supervised release.

The plain text of 18 U.S.C. § 3583(h) and U.S.S.G. § 7B1.3(g)(2) negates Sayer's position. Section 3583(h) establishes that:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release <u>shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release</u>.

(Emphasis added). U.S.S.G. § 7B1.3(g)(2) basically mirrors the statute. Here, Sayer does not dispute that the maximum supervised release term authorized for his original cyberstalking offense is

---

[12] On page 5 of the Revocation Report, the Probation Officer erroneously appears to suggest that supervised release can be imposed upon revocation only if the term of imprisonment imposed is "less" than the maximum term of imprisonment imposable upon revocation. Nevertheless, the Probation Officer correctly stated the calculation on the Revocation Report's page 4 when he explained that "the term of supervised release that can be imposed upon revocation is 36 months, less any imprisonment imposed for this revocation."

thirty-six months.  According to Section 3583(h), the district court could impose a second supervised release term as long as it did not exceed the term of supervised release authorized for the underlying conviction (i.e., thirty-six months), less the term of imprisonment that was imposed upon revocation (i.e., twenty-four months). As thirty-six minus twenty-four equals twelve, simple arithmetic reveals that the new twelve-month supervised release term does not exceed the maximum allowed upon revocation.

Finally, the fact that some district courts exercise their discretion to impose only the maximum statutory imprisonment term upon revocation, without a new supervised release term,[13] does not affect the district court's authority here to impose the twelve-month supervised release term upon revocation.  Thus, Sayer has not been able to show any error in the district court's imposition of his supervised release term on revocation.

### III.  Conclusion

For the reasons expounded above, Sayer's revocation sentence is affirmed.

**Affirmed**.

---

[13]  See United States v. Márquez-García, 862 F.3d 143, 145 (1st Cir. 2017), United States v. Alejandro-Rosado, 878 F.3d 435, 438 (1st Cir. 2017), United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017).