# United States Court of Appeals
## For the First Circuit

Nos. 18-2029
     18-2030

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL J. FLORES-QUIÑONES,
a/k/a Popeye,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Tanaira Padilla-Rodríguez on brief for appellant.
Gregory B. Conner, Assistant United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and W. Stephen Muldrow, United States Attorney, on brief for appellee.

January 15, 2021

**LYNCH**, **Circuit Judge**.  In 2018, police saw Rafael J. Flores-Quiñones ("Flores"), who was on supervised release for a drug-trafficking conviction, shooting an assault rifle from his car window outside a restaurant/pub ("pub") in Canóvanas, Puerto Rico.  After Flores fled from the police, the officers found a loaded assault rifle on the seat of his car which was a basis for charges of both a revocation of his supervised release and a new crime.  He pleaded guilty to being a felon in possession of a firearm and was sentenced to sixty months' imprisonment for that new offense and to eighteen months' imprisonment for the revocation of supervised release.  He now argues that those sentences were procedurally and substantively unreasonable.  Finding no error, we affirm.

I.

In 2010, Flores was convicted of conspiracy to possess with intent to distribute at least 500 grams, but less than two kilograms, of cocaine within 1,000 feet of a protected location. He sold drugs and acted as a lookout for a drug-trafficking organization at a public housing project in Carolina, Puerto Rico. He was sentenced to sixty months' imprisonment and eight years of supervised release.

After Flores was released from incarceration in January 2016, he began serving his supervised release in Pennsylvania, where his daughters and their mother lived.  While there, he failed

- 2 -

to appear for urine tests on several occasions and admitted to marijuana use. After returning to Puerto Rico, he tested positive for benzodiazepines and admitted to synthetic marijuana use. He was caught with synthetic marijuana at an in-patient substance abuse program, causing his expulsion from that program. The district court revoked Flores's supervised release and sentenced him in June 2017 to nine months' imprisonment.

Flores was released in January 2018. On March 29, 2018, the Puerto Rico Police Department received a tip from a confidential source that Flores had been seen firing a rifle outside a pub located on a highway in Canóvanas, Puerto Rico, which is about a thirty-minute drive from San Juan. In the early morning of April 1, 2018, officers saw Flores leave the pub, get in a car, take out a rifle, and fire it out of the window into the air. After following Flores to a local market in nearby Río Grande, the officers confronted Flores and he fled on foot. The officers observed an AR-15 rifle, which was loaded with twenty-five rounds of .223-caliber ammunition, in plain view on the front passenger seat of Flores's car. The officers arrested Flores at his home later that day. He admitted that the assault rifle was his and that he had fired it that morning outside the pub.

A federal grand jury indicted Flores on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The government also commenced revocation proceedings

against him.  Flores pleaded guilty to the felon-in-possession charge pursuant to a plea agreement.  He agreed to a total offense level of nineteen as to that offense.  The plea agreement did not include a stipulated criminal history category.  It provided that the government would seek a sentence at the higher end of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range for the felon-in-possession offense, while Flores could seek a sentence at the lower end for that offense.

The presentence report ("PSR") calculated a Guidelines sentencing range of thirty-seven to forty-six months for the felon-in-possession offense based on a total offense level of nineteen and a criminal history category of III.  The PSR identified no factors warranting a departure for that offense.  The U.S. Probation Office separately calculated a Guidelines sentencing range of four to ten months for the revocation of supervised release based on the felon-in-possession offense.

On September 25, 2018, the district court held a hearing to sentence Flores on the felon-in-possession offense and to address the revocation of his supervised release.

As to the felon-in-possession offense, Flores requested a sentence at the low end of the calculated Guidelines sentencing range, arguing that his difficult family history led to his criminal behavior and that he was still young and had a GED and work experience as a cook.  He requested a sentence at the high

- 4 -

end for the revocation of supervised release and a total sentence for both of forty-seven months. The government requested forty-six months for the felon-in-possession offense, the high end of the Guidelines range. It argued that the offense was particularly serious because Flores committed it within a few months of his release from prison and while on supervised release, he fired an assault rifle which is particularly dangerous, and his most recent prison term was already for revocation of supervised release. The government also requested a higher-end sentence for the revocation, arguing that Flores's crimes had escalated from drugs to firearm possession. The government sought a total sentence of fifty-six months between the felon-in-possession offense and the revocation of supervised release.

Addressing first the felon-in-possession offense, the district court agreed with the Guidelines calculation set forth in the PSR, finding a Guidelines range of thirty-seven to forty-six months for that offense. It then considered the sentencing factors set forth in 18 U.S.C. § 3553(a). It noted that Flores was twenty-eight years old and had a GED and a history of employment before his arrest. It also noted his history of using marijuana and Percocet.

The district court recounted that Flores had "fired out of his car window outside a restaurant only three months after his supervised release term had commenced, which put the lives of other

persons in danger." It noted that "Flores possessed a semi-automatic firearm capable of accepting a large capacity magazine," namely "an AR-15 type assault rifle . . . loaded [with] a high capacity magazine with 25 rounds of .223 ammunition."

Citing the sentencing factors under 18 U.S.C. § 3553(a), the district court found that "[b]ecause the weapon Mr. Flores possessed was an assault rifle, and because he fired it outside his car window putting the lives of other persons in danger," neither the sentence Flores sought nor the sentence the government sought for the felon-in-possession offense "reflect[ed] the seriousness of the offense, promote[d] respect for the law, protect[ed] the public from further crimes by Mr. Flores, or addresse[d] the issues of deterrence and punishment." The court imposed a sentence of sixty months' imprisonment on the felon-in-possession offense to be served consecutively to the sentence to be imposed for the revocation. Flores objected to the felon-in-possession sentence as procedurally and substantively unreasonable but did not specify the grounds for objection.

Turning to the revocation, the district court found that Flores had violated the conditions of his supervised release by committing a new crime and revoked his supervised release. It agreed with the Probation Office's calculated Guidelines range of four to ten months' imprisonment for the supervised release violation.

- 6 -

The district court considered the sentencing factors for Flores's revocation sentence. The court explained that Flores had previously violated the terms of his supervised release by possessing and abusing drugs and by failing to participate in drug treatment programs, and it concluded that his history of violations demonstrated his inability to comply with the law and the conditions of his release. It also reiterated that Flores fired an assault rifle out of his car "in complete disregard to the safety of innocent bystanders and residents of the area." Again citing the § 3553(a) sentencing factors, the court concluded that a sentence above the Guidelines range for the revocation was warranted "[t]o reflect the seriousness of the offense, [to] promote respect for the law, [to] provide just punishment for the offense, [to] afford adequate deterrence, and to protect the public from further crimes by" Flores. The district court imposed a sentence of eighteen months for Flores's revocation to be served consecutively to the sentence for the felon-in-possession offense. Flores again objected to the sentence as procedurally and substantively unreasonable but again did not specify the grounds for objection.

Flores timely appealed.

## II.

Flores challenges both the procedural and substantive reasonableness of his above-Guidelines-range sentences. Although

the appeal is from two different sentences, the felon-in-possession sentence and the revocation sentence, Flores does not distinguish between the two but rather presents one set of arguments as to both. We thus treat the arguments as to those sentences together. "Where challenges are to the procedural and substantive reasonableness of a sentence, '[o]ur review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable.'" United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020) (alteration in original) (internal quotation marks omitted) (quoting United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019)). "In the sentencing context, we evaluate claims of unreasonableness in light of the totality of the circumstances." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (citing Gall v. United States, 552 U.S. 38, 51 (2007)).

"In assessing the procedural reasonableness of a sentence, we apply a 'multifaceted' abuse of discretion standard in which 'we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls.'" Reyes-Torres, 979 F.3d at 7 (quoting United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017)). "We review a preserved challenge to the substantive reasonableness of a sentence under an abuse of

- 8 -

discretion standard."  Id. at 9.  "A sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'"  Sayer, 916 F.3d at 39 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

Flores first argues that the district court impermissibly departed upwardly from the Guidelines sentencing ranges without complying with the notice requirements of Fed. R. Crim. P. 32(h),[1] which purportedly rendered the resulting sentences procedurally infirm.  He argues that U.S.S.G. § 5K2.6 explicitly provides for a substantial departure from the Guidelines sentencing range where a dangerous weapon is possessed and fired in the commission of an offense that endangers others, and so the departure Guidelines expressly cover what the district court did here.[2]  U.S. Sent'g Guidelines Manual § 5K2.6 (U.S. Sent'g Comm'n

---

[1]  Rule 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure[ and t]he notice must specify any ground on which the court is contemplating a departure."  Fed. R. Crim. P. 32(h) (emphases added).

[2]  The full text of U.S.S.G. § 5K2.6 provides: "If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range.  The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others.  The discharge of a firearm might warrant a

- 9 -

2018). Those arguments lack merit for the simple reason that the district court did not depart from the applicable Guidelines ranges, but rather imposed variant sentences.[3]

The district court specifically discussed the particular dangerousness of the offense conduct, which involved Flores shooting a semi-automatic rifle in a public area outside a pub, and Flores's repeated disregard for the terms of his supervised release. Those circumstances led the district court to conclude that above-Guidelines-range sentences were necessary to afford adequate deterrence, to reflect the seriousness of the offense, to protect the public, and to promote respect for the law, all of which are factors under 18 U.S.C. § 3553(a)(2). The district court also expressly cited § 3553(a) in sentencing Flores. Setting a sentence after referencing and analyzing the sentencing factors under § 3553(a) shows that the court was imposing a variance, even when it referenced grounds which would be relevant to a departure under the Guidelines. See United States v. Santini-Santiago, 846 F.3d 487, 491 (1st Cir. 2017); United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014) (concluding that

---

substantial sentence increase." U.S. Sent'g Guidelines Manual § 5K2.6 (U.S. Sent'g Comm'n 2018).

[3] Because we reject Flores's claims of procedural and substantive unreasonableness on the merits and find that the district court committed no error, we need not reach the government's arguments as to plain error review and waiver.

the sentencing court engaged in a variance, even though it "echo[ed]" grounds for a departure under the Guidelines). Because the district court imposed variant sentences, and not departures, the notice requirements of Rule 32(h) did not apply. Irizarry v. United States, 553 U.S. 708, 714-16 (2008); Santini-Santiago, 846 F.3d at 490; see also United States v. Daoust, 888 F.3d 571, 575 (1st Cir. 2018) (holding that the advance notice requirements of Rule 32(h) do not apply to sentences imposed for supervised release violations, which are governed by a different rule).

Nor were the sentences imposed otherwise procedurally unreasonable. In assessing procedural reasonableness, "[w]e must ensure that the district court did not commit any 'significant procedural error' to arrive at a sentence." Sayer, 916 F.3d at 37 (quoting Gall, 552 U.S. at 51). Significant procedural errors include

> failing to calculate (or improperly calculating) the [Guidelines sentencing range], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.

Flores-Machicote, 706 F.3d at 20 (second alteration in original) (quoting Gall, 552 U.S. at 51).

Flores does not argue that the district court failed to calculate or miscalculated the Guidelines sentencing range,

- 11 -

treated the Guidelines as mandatory, or selected a sentence based on clearly erroneous facts. And the district court expressly referenced and analyzed the § 3553(a) factors and explained why, based on those factors, it was imposing sentences which exceeded the Guidelines ranges. There was no significant procedural error.[4]

For the same reasons, Flores's argument that the variant sentences were substantively unreasonable lacks merit. The district court provided plausible sentencing rationales for both sentences based on the dangerousness of the assault rifle fired in public and Flores's repeated and flagrant disrespect for the terms of his supervised release, which included committing a serious offense within only a few months of his latest release from prison. See, e.g., United States v. Méndez-Báez, 927 F.3d 39, 42-43 (1st Cir. 2019); Daoust, 888 F.3d at 577-78. The upwardly variant sentences were a defensible result based on those circumstances

---

[4]     The district court cited the sentencing factors under 18 U.S.C. § 3553(a) in varying upwardly on the revocation sentence, even though the relevant factors are found in a separate section, 18 U.S.C. § 3583(e). See Daoust, 888 F.3d at 576. However, § 3583(e) does not enumerate any independent considerations but rather explicitly incorporates a number of the § 3553(a) factors, including the nature and circumstances of the offense, the need for adequate deterrence, and the need to protect the community from further crimes of the defendant. Id.; see also 18 U.S.C. § 3583(e). And in any event, the defendant waived any argument that the failure to cite specifically to § 3583(e) with respect to the revocation sentence was procedural error by not raising it in his brief. See Vázquez-Rivera v. Figueroa, 759 F.3d 44, 46-47, 47 n.1 (1st Cir. 2014); United States v. Dávila-Félix, 667 F.3d 47, 51 n.5 (1st Cir. 2011).

and the need to achieve adequate deterrence, to protect the community, and to promote respect for the law.  See, e.g., Méndez-Báez, 927 F.3d at 42-43; Daoust, 888 F.3d at 575-78 (affirming both the procedural and substantive reasonableness of an upwardly variant sentence for a revocation of supervised release).

Flores's variant sentences are both procedurally and substantively reasonable.

Affirmed.