# United States Court of Appeals
## For the First Circuit

Nos. 21-1540
     21-1541

UNITED STATES,

Appellee,

v.

ARGENIS ERCIDES BRUZÓN-VELÁZQUEZ, a/k/a/ Cuajo,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Lydia Lizarribar Masini on brief for appellant.
Julia M. Meconiates, Assistant United States Attorney, W.
Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, on brief for appellee.

September 15, 2022

**LYNCH**, **Circuit Judge**.  Argenis Ercides Bruzón-Velázquez admitted under oath that, in the course of a carjacking, he forced the car's owner into the vehicle at gunpoint, drove to a remote location, and repeatedly and fatally shot the owner.  He also confessed to firing a rifle while attempting a separate carjacking two months later.  As part of a plea agreement with the government, he pleaded guilty to discharging a firearm during and in relation to a crime of violence resulting in death, see 18 U.S.C. § 924(c)(1)(A)(iii), (j), and to attempted carjacking, see id. § 2119(1).  Four months later, Bruzón-Velázquez, through counsel, filed a motion seeking to withdraw his guilty plea.  The district court denied that motion and a motion for reconsideration of that denial.  At a later sentencing hearing, the court sentenced Bruzón-Velázquez to consecutive sentences of life imprisonment for the firearm offense and fifteen years' imprisonment for the carjacking offense.

Bruzón-Velázquez raises two issues on appeal.  First, he challenges the district court's denial of his motion to withdraw his guilty plea.[1]  Second, he argues that the district court erred procedurally and substantively in imposing his sentence.

We find no error and affirm.

---

[1]  He does not appeal the district court's denial of his motion for reconsideration of the denial of his withdrawal motion.

I.

A.

Because this appeal follows a guilty plea, "we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report [(PSR)], and the transcript of the sentencing hearing." United States v. De la Cruz, 998 F.3d 508, 509 (1st Cir. 2021) (quoting United States v. Padilla-Colón, 578 F.3d 23, 25 (1st Cir. 2009)).

On April 14, 2017, Bruzón-Velázquez discussed the possibility of committing a robbery with four other individuals: two women, Candy Cedeño-González and Tatiana Yari Giusti-Saldaña, and two men, Ariel González-Aléstica and an adult known as "Cachete."[2] Giusti-Saldaña mentioned that she knew people in a certain area might have money, and the group drove to the location she suggested.

There, Bruzón-Velázquez and Cachete watched as Cedeño-González and Giusti-Saldaña spoke to a series of men at a bar. When Giusti-Saldaña left the bar with a male patron, David Dubique, and walked toward Dubique's Ford Transit, Bruzón-Velázquez followed.

---

[2] Cedeño-González, Giusti-Saldaña, and González-Aléstica were later indicted as Bruzón-Velázquez's codefendants in one of the cases underlying this appeal, arising out of the events of April 14, 2017.

- 3 -

When Dubique and Giusti-Saldaña reached the Transit, Bruzón-Velázquez and Cachete forced Dubique into the vehicle at gunpoint. Bruzón-Velázquez then drove the Transit, with Cachete and Dubique inside, to a remote area. There, Bruzón-Velázquez forced Dubique to get out of the car. Bruzón-Velázquez then fatally and repeatedly shot Dubique in the head with a .40 caliber Glock pistol.

After killing Dubique, Bruzón-Velázquez, accompanied by Cachete, drove the Transit away from the scene, stopping at a location a short distance away, where the remainder of the group met them in González-Aléstica's car. Bruzón-Velázquez and Cachete searched the Transit while Giusti-Saldaña tried to wipe down the front passenger door. The group then abandoned the stolen vehicle, leaving together in González-Aléstica's car. Bruzón-Velázquez boasted to the others present: "Did you see how the guy stayed there[?] . . . I opened up his brains."

Roughly two months later, on June 21, 2017, Bruzón-Velázquez and another individual attempted forcibly to take possession of a Mercedes-Benz automobile while brandishing firearms -- a rifle for Bruzón-Velázquez and a handgun for the other individual. When an armed third party intervened, Bruzón-Velázquez fired his rifle and fled the scene.

B.

In July 2017, a federal grand jury indicted Bruzón-Velázquez on five counts arising out of the April shooting, including discharging a firearm during and in relation to a crime of violence resulting in death.[3] See 18 U.S.C. § 924(c)(1)(A)(iii), (j). Later that year, a grand jury charged him in a separate case with two offenses related to the June incident, including attempted carjacking.[4] See id. § 2119(1). The two cases were transferred to the docket of the same district court judge. Bruzón-Velázquez initially pleaded not guilty on all counts.

The district court gave notice to the parties of a "[p]retrial [c]onference . . . or . . . change of plea hearing." The conference/hearing was held on January 16, 2020. When the hearing commenced, Bruzón-Velázquez's counsel requested an opportunity to confer with her client about a new plea offer from the government. Under the government's proposal, Bruzón-Velázquez would plead guilty to discharging a firearm during and in relation

---

[3]    The indictment also charged Bruzón-Velázquez with carjacking resulting in death, see 18 U.S.C. § 2119; kidnapping resulting in death, see id. § 1201(a); discharging of a firearm during and in relation to a crime of violence, see id. § 924(c)(1)(A)(iii); and possession of a machinegun, see id. § 922(o)(1), 924(a)(2).
[4]    The grand jury also charged Bruzón-Velázquez with discharge of a firearm during and in relation to a crime of violence. See 18 U.S.C. § 924(c)(1)(A)(iii).

- 5 -

to a crime of violence resulting in death in connection with the April shooting and to attempted carjacking in connection with the June incident. In exchange, the prosecution would dismiss the remaining counts and agree to a sentencing recommendation; the offer would allow the government to recommend a total sentence of no more than 433 months, while the defense could recommend a total sentence of no less than 360 months.[5]

At defense counsel's request, the court recessed for an hour for Bruzón-Velázquez to review the offer with his attorney. Once court resumed, defense counsel indicated that Bruzón-Velázquez would accept the government's proposed plea agreement and plead guilty but "want[ed] to call his mother" first. Bruzón-Velázquez's attorney further expressed that she "th[ought] we should take [the plea] today while we are here" after the call. The prosecution stated that it "ha[d] no problem waiting," and the court recessed for an additional two-and-a-half hours.

After this second recess, during which Bruzón-Velázquez spoke with his wife and mother, Bruzón-Velázquez's counsel

---

[5] The plea agreement also included a waiver of Bruzón-Velázquez's right to appeal "if the imprisonment sentence imposed by the Court is of 433 months or less." The parties agree, as do we, that the waiver does not bar this appeal because "[e]ven a knowing and voluntary appeal waiver only precludes appeals that fall within its scope." United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007). Bruzón-Velázquez's ultimate sentence of imprisonment for life plus 180 months exceeds 433 months in length, placing this appeal outside the scope of the waiver.

announced that Bruzón-Velázquez was "ready for his plea," and the district court began an extensive plea colloquy. In response to the court's questions, Bruzón-Velázquez stated, among other things, that he was not under the influence of medication, drugs, or alcohol; that he had discussed the charges and the plea offer with his counsel; that he understood the charges against him, his rights, and the terms and consequences of the plea offer; and that he wanted to plead guilty. He also admitted that he had fatally shot Dubique with a pistol during the April carjacking and used a rifle in the June attempted carjacking. Satisfied that Bruzón-Velázquez was "fully competent and capable of entering an informed plea, . . . and that his plea of guilty [was] a knowing and voluntary one," the court accepted the plea.

Four months later, Bruzón-Velázquez filed a motion under Federal Rule of Criminal Procedure 11(d) to withdraw his guilty plea, arguing that he was "surprised" by the plea offer and "pressured" into accepting it by the purportedly limited time available to consider the offer and the fact that his wife and mother were "very upset and crying" when he spoke with them about the potential plea bargain. The government opposed the motion.

The district court denied the motion without a hearing.[6] See United States v. Brúzon-Velázquez, 475 F. Supp. 3d 86 (D.P.R.

---

[6] Bruzón-Velázquez does not challenge the district court's decision not to hold a hearing on appeal.

2020). The court reasoned that "[t]ime pressures" and "[o]ther external . . . stressors" are "usually not dispositive" in determining whether to allow withdrawal of a guilty plea, as "[t]he relevant question" is "whether the decision to plead was voluntary, i.e., a product of free will." Id. at 90 (quoting United States v. Pellerito, 878 F.2d 1535, 1541 (1st Cir. 1989)). It concluded that the multiple recesses during the change-of-plea hearing, as well as Bruzón-Velázquez's responses during his plea colloquy, established that his guilty plea had been knowing, voluntary, and intelligent. See id. The court also observed that Bruzón-Velázquez had not made a credible claim of actual innocence and that the timing of his request, months after he entered the plea at issue, did not warrant allowing him to withdraw the plea.[7] See id. at 90-91.

While this motion was pending, the probation officer produced an initial PSR, which determined that the United States Sentencing Guidelines ("Guidelines") provided a recommended sentencing range of 324-405 months. This calculation included a reduction in the offense level due to Bruzón-Velázquez's admission of responsibility during his plea colloquy. Bruzón-Velázquez filed several objections to this initial PSR; in particular,

[7] Bruzón-Velázquez, through counsel, filed a motion for reconsideration of the district court's decision, which the district court denied.

consistent with his motion to withdraw his guilty plea, he objected to its factual assertions about his guilt. The probation officer then filed an amended PSR that, among other changes, removed the offense-level reduction for Bruzón-Velázquez's acceptance of responsibility because Bruzón-Velázquez now contested his guilt. This change increased the Guidelines sentencing range to life in prison. Bruzón-Velázquez did not object to the amended PSR's Guidelines calculations.

At the sentencing hearing on June 30, 2021, Bruzón-Velázquez, through counsel, argued again that he should be allowed to withdraw his guilty plea. The district court rejected this argument. Defense counsel then presented mitigating factors, including Bruzón-Velázquez's being born and raised in a high-crime area and lack of familial support and educational opportunities. Both the defense and prosecution requested a sentence in line with the plea agreement. The victim's brother and sister, in contrast, both asked the district court to "apply the full extent of the law" in sentencing. Bruzón-Velázquez himself said only that he "would like to go to trial."

The district court accepted the amended PSR's Guidelines calculations and recognized that the Guidelines sentencing range for the firearm offense was life imprisonment, while the carjacking offense carried a maximum penalty of fifteen years' imprisonment. The court explained that it had "considered the other sentencing

factors set forth in [18 U.S.C. § 3553(a)]," the parties' arguments and recommendations, "the statements by the victim's family members, and [Bruzón-Velázquez's] short allocution." It also noted Bruzón-Velázquez's age, education, employment history, and past substance abuse. And it emphasized that Bruzón-Velázquez had "murdered Mr. Dubique . . . by shooting him several times" and then "boasted[,] . . . 'Did you see how the guy stayed there[?] . . . I opened up his brains.'" In light of all these considerations, the court concluded that consecutive sentences of life imprisonment for the firearm offense and fifteen years' imprisonment for the carjacking offense would "reflect the seriousness of the offenses, promote respect for the law, protect the public from further crimes by [Bruzón-Velázquez], and address[] the issues of deterrence and punishment." It sentenced Bruzón-Velázquez accordingly. Bruzón-Velázquez did not object to the district court's sentencing procedure.

Bruzón-Velázquez timely filed these consolidated appeals.

## II.

Bruzón-Velázquez first challenges the denial of his motion to withdraw his guilty plea. We review the denial of a motion to withdraw a guilty plea before sentencing for abuse of discretion. United States v. Valdez, 975 F.3d 63, 67 (1st Cir. 2020). "The burden is on the defendant to prove that there is a

'fair and just reason' to withdraw the guilty plea prior to sentencing." Id. (quoting United States v. Rodríguez-Morales, 647 F.3d 395, 398-99 (1st Cir. 2011)). The relevant factors, which the district court thoroughly analyzed, see 475 F. Supp. 3d at 89-91, are "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion; whether there is a serious claim of actual innocence; the timing of the motion; and any prejudice to the government if the withdrawal is allowed," United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009). On appeal, Bruzón-Velázquez focuses primarily on the first factor, arguing that his plea was not voluntary because of surprise, time pressure, and "family duress." We reject these contentions for the reasons given by the district court.

First, Bruzón-Velázquez claims he was "surprised" by the plea offer because the hearing when it was made "was a pretrial [conference,] not a change of plea [hearing]." But the district court had noted in its previous orders that the scheduled hearing could be either a pretrial conference or a change-of-plea hearing. Nor do the filing of pretrial motions, or other indications that Bruzón-Velázquez wished to go to trial, negate the voluntariness of his plea. See United States v. Sanchez-Barreto, 93 F.3d 17, 23 (1st Cir. 1996) (upholding denial of motion to withdraw pleas entered on the morning trial was scheduled to begin).

- 11 -

Bruzón-Velázquez's argument that he was "rushed" into pleading guilty fares no better. "A defendant seeking to unravel a guilty plea . . . must show that he pleaded guilty 'under so much duress that [his plea] could no longer be considered a product of free will.'" United States v. Adams, 971 F.3d 22, 39 (1st Cir. 2020) (alteration in original) (quoting United States v. Caramadre, 807 F.3d 359, 369 (1st Cir. 2015)). Bruzón-Velázquez cannot meet that standard. As a factual matter, the record does not support the claim that he lacked adequate time to consider the plea offer: The district court repeatedly recessed to allow Bruzón-Velázquez to consult with his attorney and family, and the prosecution indicated that it had "no problem waiting" for him to do so. During the plea colloquy, Bruzón-Velázquez affirmed that he had had the opportunity to discuss the plea with his attorney, understood his rights and the agreement's terms and consequences, and intended to plead guilty. And as a legal matter, facing time pressure "is common among criminal defendants, and hardly exceptional enough to evince an overbearing of [a defendant's] will." United States v. Marrero-Rivera, 124 F.3d 342, 350 (1st Cir. 1997) (holding time pressure did not render guilty plea entered within an hour of deadline involuntary). Bruzón-Velázquez offers no reason to treat the time pressure in this case as "exceptional." Id.

Bruzón-Velázquez's contention that "family duress" rendered his plea involuntary similarly fails. "Evidence of agitation arising out of familial circumstances does not, without more, show duress or lack of voluntariness." Adams, 971 F.3d at 39. Adams, for example, concluded that pressure stemming from "'the prospect of a life sentence' and the potential hardship such a sentence would inflict on '[the defendant's] ailing mother and his children'" did not render a defendant's plea involuntary. Id. Both in the district court and on appeal, Bruzón-Velázquez alleges generally that he was "confused" because of how "upset" his wife and mother were when he spoke with them before accepting the plea. These allegations contain nothing "more" than "agitation arising out of familial circumstances" and do not render his plea involuntary. Id.

The district court did not abuse its discretion in denying Bruzón-Velázquez's motion to withdraw his guilty plea.[8]

---

[8] Bruzón-Velázquez's brief also includes a short discussion of the timing of his motion to withdraw his plea, explaining that the months-long delay in the motion's filing was the product of transfers between correctional facilities, difficulty communicating with counsel, and complications resulting from the pandemic. The district court considered similar arguments in denying the withdrawal motion and correctly concluded that, whatever the reason for the delay, "[w]ithout other factors weighing in [Bruzón-Velázquez's] favor, the timing of the motion is not a strong enough factor on its own to warrant a withdrawal of [his] plea." 475 F. Supp. 3d at 91; see United States v. Merritt, 755 F.3d 6, 11 (1st Cir. 2014) ("[T]iming alone is not enough to tip the scales.").

- 13 -

III.

Bruzón-Velázquez also challenges both the procedural and substantive reasonableness of his sentence. "Where challenges are to the procedural and substantive reasonableness of a sentence, '[o]ur review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable.'" United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021) (quoting United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020) (alteration in original) (internal quotation marks omitted)). "In the sentencing context, we evaluate claims of unreasonableness in light of the totality of the circumstances." Id. (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)).

A.

We turn first to Bruzón-Velázquez's procedural challenges. "Typically, we review sentences . . . for abuse of discretion," but "[w]hen a defendant fails to preserve an objection below, the plain error standard supplants the customary standard of review."[9] United States v. Arroyo-Maldonado, 791 F.3d 193, 197

---

[9] "Under the plain error standard, the appellant must show '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Viloria-Sepulveda, 921 F.3d 5, 8 n.1 (1st Cir. 2019) (quoting United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017)).

(1st Cir. 2015) (alteration in original) (quoting United States v. Fernández-Hernández, 652 F.3d 56, 71 (1st Cir. 2011)). Bruzón-Velázquez did not raise any procedural objections during sentencing proceedings, so we review his procedural arguments for plain error. We find no error, plain or otherwise.

Bruzón-Velázquez first argues that the district court "did not consider" his claim that he "didn't kill anyone." But the record shows that the court discussed this claim with Bruzón-Velázquez's counsel during the sentencing hearing and reasonably rejected it based on Bruzón-Velázquez's admission of guilt during his plea colloquy. See United States v. Gates, 709 F.3d 58, 69-70 (1st Cir. 2013) ("A defendant is normally bound by the representations that he himself makes in open court at the time of his plea.").

Bruzón-Velázquez next contends that his "due process rights were violated" during sentencing because "he had no options" but to accept a plea bargain. Even assuming that the district court's reliance on Bruzón-Velázquez's earlier guilty plea could qualify as a procedural error during sentencing, this argument fails for the same reasons as his appeal of the denial of his motion to withdraw the plea itself: the guilty plea was voluntary, intelligent, and knowing.

Nor is any other procedural error apparent from the record. "In assessing procedural reasonableness, '[w]e must

ensure that the district court did not commit any "significant procedural error" to arrive at a sentence.'" Flores-Quiñones, 985 F.3d at 134 (alteration in original) (quoting United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019)).  Such errors include

> failing to calculate (or improperly calculating) the [Guidelines sentencing range], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.

Id. (alterations in original) (quoting Flores-Machicote, 706 F.3d at 20).  Bruzón-Velázquez "does not argue that the district court failed to calculate or miscalculated the Guidelines sentencing range, treated the Guidelines as mandatory, or selected a sentence based on clearly erroneous facts," and "the district court expressly referenced and analyzed the § 3553(a) factors" and explained its reasons for imposing the challenged sentence, which fell within the Guidelines range.  Id.  There was no significant procedural error.

## B.

Finally, we address Bruzón-Velázquez's argument that his sentence is substantively unreasonable.  Because Bruzón-Velázquez preserved the issue by arguing for a shorter sentence in the district court, we review the sentence's substantive reasonableness for abuse of discretion.  See United States v.

- 16 -

Ramos-David, 16 F.4th 326, 335 (1st Cir. 2021). "A sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Flores-Quiñones, 985 F.3d at 133 (quoting Sayer, 916 F.3d at 39). A sentence "within the Guidelines range . . . deserves 'a presumption of reasonableness.'" United States v. Llanos-Falero, 847 F.3d 29, 36 (1st Cir. 2017) (quoting United States v. Cortés-Medina, 819 F.3d 566, 572 (1st Cir. 2016)).

Bruzón-Velázquez's sentence easily passes muster under this standard. The district court provided a "plausible sentencing rationale," Flores-Quiñones, 985 F.3d at 133 (quoting Sayer, 916 F.3d at 39), citing, among other considerations, the Guidelines, the § 3553(a) factors, the requests by the victim's family that the court "apply the full extent of the law" in sentencing, and the facts that Bruzón-Velázquez admitted as part of the plea agreement. And the resulting sentence is certainly "defensible." Id. (quoting Sayer, 916 F.3d at 39). Not only does it fall within the presumptively reasonable Guidelines range, Llanos-Falero, 847 F.3d at 36, but it also reflects the callousness and brutality of Bruzón-Velázquez's offenses. As the district court observed during sentencing, Bruzón-Velázquez "forced" his victim, Dubique, into a stolen vehicle at gunpoint; "drove . . . to a desolate area"; "forced Dubique to exit [the vehicle;] and shot him multiple times with a .40 caliber Glock pistol." After executing Dubique,

- 17 -

Bruzón-Velázquez "boasted" about having "opened up his brains." The district court selected a sentence that appropriately "reflect[s] the seriousness of the offenses" and "protect[s] the public from further crimes by [Bruzón-Velázquez]."

Bruzón-Velázquez's arguments against the sentence's reasonableness are unpersuasive. He notes that the district court "imposed the highest possible sentence . . . [under] the [G]uidelines," but does not dispute that the sentence is within the presumptively reasonable Guidelines range. See Llanos-Falero, 847 F.3d at 36. He further contends that the district court "barely touched upon the mitigating factors argued" by the defense. But "the allocation of weight as among sentencing factors is -- within wide margins -- a matter committed to the district court's informed discretion," United States v. deJesús, 6 F.4th 141, 149 (1st Cir. 2021), and the district court cogently explained its reasons for striking the balance as it did. Finally, he argues that "a group of people . . . acted together" to cause "the death of Mr. Dubique," and suggests -- without citation to the record -- that Bruzón-Velázquez received the harshest sentence of all the individuals involved. Even assuming this assertion is true, the district court adequately explained the considerations particular to Bruzón-Velázquez that rendered the sentence appropriate, including the fact that he, alone among his codefendants, repeatedly shot Dubique and boasted about doing so.

Bruzón-Velázquez has not met his burden to show that his sentence falls outside the "universe of reasonable sentences."  United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015).

Affirmed.