# United States Court of Appeals
## For the First Circuit

No. 16-2454

UNITED STATES OF AMERICA,

Appellee,

v.

JESÚS M. QUIÑONES-OTERO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lynch, Kayatta,
Circuit Judges.

Andrew S. McCutcheon, Assistant Federal Public Defender, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, on brief for appellee.
Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellant.

August 28, 2017

**LYNCH**, **Circuit Judge**.  Jesús Quiñones-Otero pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced Quiñones-Otero to twenty-seven months of incarceration, which was the top end of the Guidelines range calculated by the presentence investigation report.  The sentence included three years of supervised release with a six-month 6:00 PM curfew enforced by electronic monitoring.  Quiñones-Otero appeals from the sentence arguing (1) the district court abused its discretion when it imposed the curfew and electronic monitoring requirement and (2) the twenty-seven-month sentence was procedurally and substantively unreasonable.  We reject these arguments and affirm.

I.

Police officers were on patrol around 6:00 AM, when a person brought Quiñones-Otero to their attention.  The person said that Quiñones-Otero "was going to get something."  Quiñones-Otero had been in an altercation at a bar earlier that night, had left the area, and was now returning to a nearby Burger King, where his car was parked.  The police officers observed a weapon tucked into Quiñones-Otero's waistband.  Quiñones-Otero ran when the police officers announced themselves and ordered him to stop.  Quiñones-Otero threw the weapon away during the chase, and was ultimately apprehended.  The police officers found the weapon after arresting Quiñones-Otero.  During interrogation by agents from the Bureau of

Alcohol, Tobacco, and Firearms, Quiñones-Otero admitted to having a prior conviction for violating Puerto Rico copyright law. Further investigation confirmed that Quiñones-Otero had a prior conviction, for which he had served two years in prison.

Quiñones-Otero, a former police officer, pled guilty without a plea agreement to possession of a firearm by a prohibited person. The Guidelines range, based on an offense level of fifteen and Quiñones-Otero's criminal history category of II, was twenty-one to twenty-seven months of imprisonment and between one and three years of supervised release.[1]

During the hours of the six-month, 6:00 PM to 6:00 AM curfew, Quiñones-Otero must "remain at [his] residence except for employment or other activities approved in advance" by United States Probation. The court ordered he must also "wear an electronic device 24 hours a day" and pay the costs of the device.

The court justified the curfew and electronic monitoring requirements by stating, "[t]he Court finds that the conditions imposed are reasonably related to the offense of conviction and to the sentencing factors set forth in 18 U.S.C. [§] 3553" and

---

[1] Quiñones-Otero argued for eighteen months of imprisonment based in part on the importance of his presence in the life of his autistic son. The government countered that other family members could take care of Quiñones-Otero's son during his incarceration, and argued for thirty months of imprisonment based on the absence of a serial number on the gun, the serious problem of illegal firearms in Puerto Rico, and Quiñones-Otero's criminal history.

"consistent with the pertinent policy statements issued by the Sentencing Commission." Quiñones-Otero objected to "the procedural and substantive unreasonableness of the sentence and to the imposition of the electronic monitoring period following the service of the sentence."

II.

The six-month curfew stands. Quiñones-Otero did not object to the curfew at sentencing, so his objection was not preserved and plain error review applies. United States v. Garrasteguy, 559 F.3d 34, 41 (1st Cir. 2009). Quiñones-Otero's objection to the "electronic monitoring period" only preserved his objection to the electronic monitoring requirement, not the curfew. The presentence investigation report suggested a six-month curfew during non-working hours, but Quiñones-Otero did not file an objection to the report.

There was no plain error here. Conditions of release must be "'reasonably related' to (1) the underlying offense or character and criminal history of the defendant; (2) the need to deter criminal conduct; (3) the goal of protecting the public; or (4) the provision of rehabilitative educational, health, or other treatment for the defendant." United States v. Rivera-López, 736 F.3d 633, 635 (1st Cir. 2013) (quoting U.S.S.G. § 5D1.3(b)). Conditions of release "must also 'involve no greater deprivation of liberty than is reasonably necessary.'" Id. (citation omitted)

Although "the district court is required to provide a reasoned and case-specific explanation for the [special] conditions it imposes," a district court's failure to "explicitly provide such an explanation" does not require us to "automatically vacate the condition" as long as we can "infer the court's reasoning from the record." United States v. Fey, 834 F.3d 1, 3 (1st Cir. 2016) (quoting United States v. Pabon, 819 F.3d 26, 30 (1st Cir. 2016)); see also id. at 6 (affirming a special condition based on record facts about the defendant's criminal history).

The curfew is sufficiently connected to the underlying crime, the need to protect the public, and the need for deterrence. The curfew is closely linked to the underlying crime. Police observed Quiñones-Otero carrying a firearm on the street at 6:00 AM. By his own account, Quiñones-Otero possessed the gun for safety purposes, had been working at a bar on the night of his arrest, and had been beaten by a group of individuals after getting into an argument on his way out of that bar. The court could have concluded that a 6:00 PM to 6:00 AM curfew was necessary to ensure that Quiñones-Otero would not be out of the house during times when he felt the need to illegally carry a firearm or when he risked feeling the need to use that firearm.

The condition is also closely connected to the need to protect the public because of the dangerousness of Quiñones-Otero's behavior. He was apprehended with a gun that had an

- 5 -

obliterated serial number and, at sentencing, the government alluded to the seriousness of the problem of untraceable weapons in Puerto Rico.

The curfew is also consistent with the need for deterrence, as this is Quiñones-Otero's second conviction. He was previously convicted for attempting to commit a copyright violation, attempting to assault a police officer during the arrest for that violation, and attempting to destroy evidence of that violation.

The connections discussed above are enough to uphold the curfew requirement. In addition to being reasonably related to the relevant factors, Quiñones-Otero's curfew only lasts for the first six months of the three-year term of supervised release. Quiñones-Otero argues that the curfew will interfere with his participation in positive activities outside work, but he can seek a modification from the court or approval in advance from his probation officer if he seeks to engage in legitimate activities.

Given that the curfew is appropriate, Quiñones-Otero's objection to the electronic monitoring requirement fails. The electronic monitoring requirement is necessary to ensure compliance with the curfew, and is not an abuse of discretion. U.S.S.G. § 5D1.3(e)(5) ("Electronic monitoring may be used as a means of surveillance to ensure compliance with a curfew order.")

Quiñones-Otero's claim that the sentence was procedurally and substantively unreasonable is meritless. The district court followed the required steps and reached a defensible result.

A.  Procedural Reasonableness

Quiñones-Otero's generic objection to the procedural reasonableness of the sentence is insufficient to preserve the objection, so plain error review will apply. United States v. Matos-de-Jesús, 856 F.3d 174, 177-78 (1st Cir. 2017). There is no plain error here. "A sentencing is procedurally sound so long as the district court complies with the 'specifically delineated roadmap' we have previously laid out." United States v. Laureano-Pérez, 797 F.3d 45, 80 (1st Cir. 2015) (quoting United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)). The district court completed every step required. Quiñones-Otero argues that the district court did not properly address the § 3553(a) factors because it did not specifically mention his relationship with his son. The district court need not address every § 3553(a) factor individually in its explanation of the sentence. United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). Here the district court stated that it had considered all of the § 3553(a) factors. This statement "is entitled to some weight." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Dávila-

- 7 -

González, 595 F.3d 42, 49 (1st Cir. 2010)). We are particularly likely to credit a district court's statement that it considered all the relevant sentencing factors when it imposes a sentence within the guidelines range, id., and when the particular fact the court allegedly neglected was a focus of argument prior to imposition of the sentence, see United States v. Denson, 689 F.3d 21, 28 (1st Cir. 2012). In sum, given Quiñones-Otero's within-guidelines sentence, the brevity of the sentencing hearing, and the centrality of Quiñones-Otero's son to his arguments for leniency, we credit the district court's statement that it considered all the sentencing factors, including "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Quiñones-Otero's relationship with his son falls under this factor.

We agree with the government that Quiñones-Otero cannot rely on the Spanish language documents attached to the sentencing memorandum he filed with the district court. The Jones Act, 48 U.S.C. § 864, requires that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico" be conducted in English. This means the district court could not consider the untranslated Spanish language documents, González-de-Blasini v. Family Dep't, 377 F.3d 81, 88 (1st Cir. 2004), and we cannot consider them on appeal, Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 13 (1st Cir. 2007).

- 8 -

B.    <u>Substantive Reasonableness</u>

There is no error in the substance of the sentence. Quiñones-Otero must cite "fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons." <u>United States</u> v. <u>Cortés-Medina</u>, 819 F.3d 566, 572 (1st Cir. 2016) (quoting <u>United States</u> v. <u>Clogston</u>, 662 F.3d 588, 593 (1st Cir. 2011)). Quiñones-Otero has only shown that the district court did not individually address each § 3553(a) factor in its explanation of the sentence, which we have already held was not required.

We <u>affirm</u>.