# United States Court of Appeals
## For the First Circuit

No. 19-1505

UNITED STATES OF AMERICA,

Appellee,

v.

LINCOLN GABRIEL PUPO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Thompson, Lipez, Circuit Judges,
and Laplante,* District Judge.

Andrew S. McCutcheon, Assistant Federal Public Defender, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Supervisor, Appeals Division, Assistant Federal Public Defender, were on brief, for appellant.
Gregory B. Conner, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

April 20, 2021

_____

* Of the District of New Hampshire, sitting by designation.

**THOMPSON, Circuit Judge**. Appellant Lincoln Gabriel Pupo pleaded guilty to the federal crime of carjacking, 18 U.S.C. § 2119. Prior to his plea, he negotiated a deal with the government stipulating a total offense level ("TOL") but not a Criminal History Category ("CHC"). At sentencing, the district judge calculated a higher TOL than the one in the plea agreement, which together with the court's CHC calculation resulted in a higher sentencing range than contemplated by the parties. Pupo, citing procedural and substantive defects during sentencing, requests that we vacate his sentence and remand for resentencing. Perceiving no error, we affirm.

## Background[1]

On January 15, 2018, two women returned to their parked car after enjoying a meal at a Longhorn Steakhouse in Guaynabo, Puerto Rico. As they settled into the car, Pupo approached the driver's side window and ordered the pair to step out. Pupo made his intentions clear, announcing that he was "assault[ing]" them and that they should exit the vehicle immediately. Then he upped the ante, telling them to get out of the car or else he would shoot

---

[1] We draw the facts from the materials on appeal, including the uncontested parts of the probation office's pre-sentence report ("PSR"), the plea colloquy, and the transcript of the relevant hearings. See United States v. Berrios-Miranda, 919 F.3d 76, 77 n.1 (1st Cir. 2019).

-2-

them (though, unbeknownst to the pair, Pupo did not have a gun). The two women complied, handed over the keys, and allowed Pupo to drive off with the car. Soon thereafter, local law enforcement located the vehicle and arrested Pupo. The two women identified Pupo as their assailant. On January 18, 2018, a federal grand jury charged Pupo with one count of carjacking, in violation of 18 U.S.C. § 2119. Pupo struck a deal with the government and pleaded guilty to the sole offense.

Leading up to his sentencing hearing, both probation's pre-sentence investigation and defense counsel's investigation revealed that Pupo had a tough upbringing and suffered from extensive substance abuse and mental health issues. Pupo came from a dysfunctional home and grew up in several public housing projects where violence pervaded. Living in an environment with rampant drug use, he began using several controlled substances at an early age. In 2011, a Puerto Rico Department of Corrections social worker diagnosed him with mixed adjustment disorder, anxiety, and depression while acknowledging a previous diagnosis of bipolar disorder and ADHD. Most recently, in 2018, Pupo underwent his first psychodiagnostics evaluation which revealed he suffered from an unspecified form of Schizophrenia and "other psychotic disorder." In his sentencing memorandum, Pupo attached the psychodiagnostics evaluation and suggested that he needed both

mental health and drug treatment, neither of which he had received up to that point.

The PSR and Pupo's sentencing memorandum addressed his difficult upbringing, substance abuse, and mental health issues in detail. The two documents, however, diverged as to the calculation of the Guidelines sentencing range ("GSR"). In his sentencing memorandum, Pupo calculated a GSR of thirty-seven to forty-six months' incarceration, using a CHC of III (even though the parties did not stipulate to a CHC level) and relying on the plea agreement's stipulated TOL of nineteen. Based on these calculations, he sought a sentence of forty months' incarceration. The PSR, however, calculated a total offense level of twenty-one and a CHC of V, yielding a GSR of seventy to eighty-seven months of imprisonment. Both the plea agreement and the PSR's calculations included a base offense level of 20 under U.S.S.G. § 2B3.1, a two-point enhancement for the carjacking offense under U.S.S.G. § 2B3.1(b)(5), and a three-point deduction for acceptance of responsibility under U.S.S.G. § 3E1.1. But the PSR also included an additional two-point "threat of death" enhancement under U.S.S.G. § 2B3.1(b)(2)(F).[2] Neither party objected to the

_____

[2] The government had agreed not to include the threat of death enhancement in the plea agreement partly because Pupo represented that following incarceration he could seek mental health and substance abuse help in Florida near his family while

-4-

PSR's calculations. In his sentencing memorandum, however, Pupo did argue that although technically correct, the PSR's CHC designation substantially over-represented the seriousness of his criminal history and likelihood of recidivism and requested a "downward departure" to category III.

At sentencing, defense counsel reiterated his request for a downward departure after describing the way in which the carjacking was a direct result of Pupo's long-standing mental health and substance abuse issues, including his recent and first-ever accurate diagnosis of an unspecified form of Schizophrenia and "other psychotic disorder" -- all of which, again, was presented in the PSR and sentencing memorandum. The government, on the other hand, found the PSR's calculation of the CHC appropriate, also noting that the court's responsibility to protect the public from Pupo cautioned against a lower sentencing range, but the government still stood by the total offense level of nineteen from the plea agreement.

After reviewing the PSR, the addendum to the PSR, and Pupo's sentencing memorandum, and after hearing from both parties, the district court disagreed with Pupo's CHC assessment. The district judge denied Pupo's request for a downward departure,

_____

on supervised release.

-5-

explaining that Pupo's "request for the Court to reconsider and reevaluate the Criminal History Category . . . is being denied as the Court finds [] that the probation officer has correctly calculated the same." As an aside, the district judge mentioned the "defendant's brushes with the law" which were "plenty and numerous" and included multiple convictions, arrests, and dismissed cases, but which did not factor into the CHC calculation.[3] Accordingly, the district judge adopted probation's calculation, resulting in a GSR of seventy to eighty-seven months.

The district judge then considered the 18 U.S.C. § 3553(a) sentencing factors. Notably for this appeal, the judge emphasized Pupo's history of mental health issues and "extensive history of substance abuse." The district judge explained that "because of [Pupo's] need for psychiatric medications and consumption of drugs . . . he has reached stages in which his mental illness predominantly is present, and has engaged in numerous violations of the law." The district judge recognized that "[t]his is Mr. Pupo's 12th known arrest and sixth conviction

---

[3] The arrests and dismissed charges which the district judge referred to included two counts of criminal contempt, one count of aggravated illegal appropriation in the fourth degree, two charges of conjugal abuse, two charges of threatening or intimidating a public authority, one charge of possession of controlled substances, one charge of damages, and two charges of possession of an edged weapon under the Puerto Rico Penal Code.

as an adult," and emphasized his actions related to the offense including the fact that "the victims felt and were submitted to the threats and feared for their lives" and that they "were robbed of the[ir] [] vehicle and belongings."  The judge again recognized that "the defendant needs treatment" for his mental health issues, and that "he needs to remain committed to his medications and to that treatment" because otherwise "he will not be able to control [his actions]."  Without medication, the district judge explained, Pupo was a "time bomb."  Finally, taking into consideration the plea agreement, the need to promote respect for the law and to protect the public from Pupo, as well as the need for deterrence and punishment, the court sentenced Pupo to a term of seventy months' imprisonment followed by three years of supervised release.[4]

Defense counsel objected to the substantive and procedural reasonableness of the sentence.  Specifically, counsel objected to the "Court's consideration of uncharged or dismissed conduct" and the "denial of the request of downward departure based on overrepresented criminal history and risk of recidivism, as well as the arguments relating to Mr. Pupo's mental health."  Pupo

---

[4] The district judge also recommended that the Bureau of Prisons provide mental health treatment and medication to Pupo and to designate him to a mental health institution or hospital facility within the Florida area.

now appeals, alleging that his within-guidelines sentence is both procedurally and substantively unreasonable.

## Standard of Review

Claims challenging the procedural and substantive reasonableness of a sentence are subject to a bifurcated inquiry: "we first determine whether the sentence imposed is procedurally reasonable" and if we conclude that it is, we "then determine whether it is substantively reasonable." United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021) (quoting United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020)); see also Gall v. United States, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable when the district court commits a procedural error such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020) (quoting United States v. Bermúdez-Meléndez, 827 F.3d 160, 163 (1st Cir. 2016)).

A sentence is substantively reasonable if the "sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Flores-Quiñones, 985 F.3d at

-8-

133 (quoting United States v. Sayer, 916 F.3d 32, 39 (1st Cir. 2019)).  In determining the substantive reasonableness of a sentence, we owe deference to the sentencing court's exercise of informed discretion in fashioning the appellant's sentence. United States v. López, 974 F.3d 1, 8-9 (1st Cir. 2020).  Further, "[i]n the sentencing context, we evaluate claims of unreasonableness in light of the totality of the circumstances." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (citing Gall, 552 U.S. at 51).

We review preserved claims of procedural and substantive unreasonableness under the deferential abuse of discretion standard, United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020), reviewing findings of fact for clear error and issues of law de novo, Bermúdez-Meléndez, 827 F.3d at 163, ever cognizant that the "touchstone of abuse of discretion review in federal sentencing is reasonableness," United States v. Benoit, 975 F.3d 20, 24 (1st Cir. 2020) (quoting United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011)).  We review unpreserved claims of procedural unreasonableness for plain error.  United States v. Sánchez-Colberg, 856 F.3d 180, 184 (1st Cir. 2017).

## Procedural Unreasonableness

Pupo asserts that the district judge committed three procedural errors during his sentencing.  We disagree.

Pupo's first argument is that the district court failed to meaningfully address his mental health diagnosis.[5] According to Pupo, the district court needed to specifically mention his diagnosed mental illness, discuss how his illness related to the § 3553(a) factors, provide a reason why such a serious diagnosis did not change the sentencing calculus, and give weight to his

---

[5] The government posits that Pupo's arguments relating to his mental health and history of drug abuse are unpreserved. According to the government: Pupo did not explicitly object to the court's allegedly inadequate consideration of his substance abuse; his challenge related to his mental health was vague; and Pupo's mental health and substance abuse arguments before the district court were different than the ones before us now. The government, however, asks too much of Pupo. A party successfully preserves a claim of error for appeal by objecting with sufficient specificity so that the district court is aware of the claimed error. United States v. Castillo, 981 F.3d 94, 101 (1st Cir. 2020); see United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) ("To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision."). Here, Pupo's sentencing memorandum clearly contended that he should receive a lower sentence because his comorbid conditions were mitigating factors cautioning against a prolonged period of incarceration. At sentencing, Pupo reiterated that the interaction of his substance abuse and mental health issues should engender leniency in the court's CHC determination and the overall sentence. Therefore, it would have been no surprise to the district court that when defense counsel objected to the procedural and substantive reasonableness of the sentence because of "the arguments relating to Mr. Pupo's mental health," he necessarily referred to the twin issues of his substance abuse and mental health struggles as they applied to his sentence. Further, by referencing those twin issues the district court was also on notice of Pupo's plea for leniency which consisted of both a lower CHC and a lower sentence, as described in the plea agreement, in the sentencing memorandum, at sentencing, and on appeal. Counsel's objections were adequate to preserve Pupo's claims before us.

-10-

psychodiagnostics evaluation. Fatal to Pupo, his arguments do not find support in this court's precedent nor in the record.

A district judge need not "verbalize its evaluation of each and every [§] 3553(a) factor" nor do so in painstaking detail. United States v. Contreras-Delgado, 913 F.3d 232, 240 (1st Cir. 2019) (alteration in original) (quoting United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016)); see United States v. Calderón-Lozano, 912 F.3d 644, 649 (1st Cir. 2019) ("The district court . . . 'is not required to address [each] factor[ ], one by one, in some sort of rote incantation when explicating its sentencing decision.'" (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) (alteration in original))). At a minimum, a district judge need only "say enough for us to meaningfully review the sentence's reasonableness." United States v. Correa-Osorio, 784 F.3d 11, 28-29 (1st Cir 2015).

The district court provided enough explanation here. The district judge stated that she considered the § 3553(a) factors, the PSR, and the sentencing memorandum which included Pupo's psychodiagnostics report -- all of which recounted his mental health and substance abuse issues and how they related to a possible sentence. See Dávila-Bonilla, 968 F.3d at 12 (explaining that "the judge had read the defense's sentencing memo and had heard the defense's leniency plea" thereby placing

appellant's mitigation evidence "front and center"). Further, the district court meaningfully considered Pupo's struggles with mental health and substance abuse at sentencing. The court repeatedly acknowledged his extensive history of substance abuse, explained that comorbidity was related to his criminal history, and acknowledged that Pupo was in need of treatment. Additionally, the court specifically discussed sending Pupo to an institution that had mental health facilities -- a clear recognition that the judge understood that Pupo needed mental health treatment. See Díaz-Rivera, 957 F.3d at 28 (noting that the court's recommendation that defendant participate in drug treatment program refuted appellant's allegation that the court ignored his history of addiction). Unfortunately for Pupo, the court did not weigh his criminal history and conditions in the manner he had hoped. The district judge highlighted that he had six convictions and that the facts of the present offense included a serious threat of violence to the victims. Even further, the district court made its view about Pupo's mental health and substance abuse at the time of the offense abundantly clear: the current combination of his untreated ailments rendered Pupo a "time bomb." See United States v. Santa-Soler, 985 F.3d 93, 99 (1st Cir. 2021) ("[I]t is incorrect to assume -- as the defendant does -- that his failure to persuade the court to impose a more lenient

sentence implies that the mitigating factors he cites were overlooked."). With this explanation squarely before us, we cannot say that the district court abused its discretion.

Next, Pupo asserts that the district court did not adequately consider his need for mental health treatment or how to implement treatment in the "most effective manner" as required by 18 U.S.C. § 3553(a)(2)(D).[6] Had the court "completely disregarded [this] sentencing factor[], this might be a different case . . . however, the record makes manifest that the judge pondered [this] sentencing factor . . . [and] simply came to a different, yet altogether plausible, conclusion as to [its] salience." Dixon, 449 F.3d at 205. The district judge explicitly referred to Pupo's mental health and substance abuse struggles and explained how those issues factored into the ultimate sentence. The district judge even questioned defense counsel about Pupo's intention of living in Florida with family following incarceration while receiving treatment, expressing skepticism as to whether that arrangement was workable. Finally, the district judge recommended Pupo to an

---

[6] Section 3553(a) requires a sentencing court to impose a sentence sufficient, but not greater than necessary, to achieve the purpose of sentencing. That sentence should, among other things, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." United States v. Rodriguez, 731 F.3d 20, 25 n.3 (1st Cir. 2013) (quoting 18 U.S.C. § 3553(a)(2)(D)).

institution that would be able to assist him. Although federal correctional institutions are not the standard-bearers for mental health and substance abuse assistance, the court weighed Pupo's needs with the need to protect society from further criminal activity and arrived at a plausible result. Dixon, 449 F.3d at 205; see United States v. Vélez-Soto, 804 F.3d 75, 79-80 (1st Cir. 2015).

Pupo's third challenge fares no better. He asserts that the district court misunderstood its authority to depart downwardly based on an overrepresented criminal history category and improperly relied on arrests and charges that did not result in convictions. The sentencing transcript suggests otherwise. While it may be true that the district judge, in part, understood defense counsel's request as a tardy objection to the PSR, the district court also denied Pupo's "request for the Court to reconsider and reevaluate the Criminal History Category" because "the probation officer has correctly calculated the [CHC]," signaling a straightforward denial of Pupo's departure request. Moreover, directly after that statement, the district judge squarely addressed the overrepresentation argument and rejected it by concluding that Pupo's "brushes with the law are plenty and numerous."

Moreover, while Pupo correctly points out that we have cautioned district judges against considering arrests not buttressed by convictions or independent proof of conduct when making an upward departure determination in United States v. Marrero-Pérez, 914 F.3d 20, 22 (1st Cir. 2019), the record does not suggest that the district judge "'equate[d] [his] arrest[s] with guilt.' Nor . . . that the court relied solely on [Pupo's] arrests or placed undue weight on either the arrests themselves or their underlying conduct" -- our principal concerns in Marrero-Pérez. Díaz-Rivera, 957 F.3d at 27 (internal citation omitted). Of course, no error results when the district judge, as occurred here, merely refers to the defendant's dismissed charges "'in the course of relying on certain conduct that took place in connection with the dismissed charges' and that conduct is described in unchallenged portions of the [PSR]." United States v. Miranda-Díaz, 942 F.3d 33, 40 (1st Cir. 2019) (quoting United States v. Mercer, 834 F.3d 39, 50 (1st Cir. 2016)); United States v. Ramírez-Romero, 982 F.3d 35, 37 (1st Cir. 2020).

## Substantive Unreasonableness

Finally, Pupo avers that his sentence is substantively unreasonable because the district judge failed to conduct a "comprehensive sentencing assessment" and did not properly balance the § 3553(a) factors. His position, however, is overwhelmingly

-15-

refuted by the record because, as we explained above, the district judge clearly articulated a plausible sentencing rationale and reached a defensible result. The district judge reviewed the PSR and sentencing memorandum, properly calculated his guidelines sentencing range, and adopted probation's uncontested CHC calculation. The district judge considered all the § 3553(a) factors and discussed Pupo's mental health and substance abuse struggles throughout the sentencing hearing. See United States v. Daoust, 888 F.3d 571, 576 (1st Cir. 2018) (noting that an explicit statement by the court that it considered all relevant factors is entitled to significant weight). The district judge also made it abundantly clear that Pupo's criminal history and the underlying facts of the instant offense were troublesome, concluding that Pupo was a "time bomb" who needed both treatment and separation from society. Taken together, we cannot assign error to a well-reasoned decision simply because the district judge chose not to attach more weight to certain mitigating factors. See United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011) ("That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable."). This is especially true where, like here, Pupo received a within-

Guidelines sentence.  <u>See</u> <u>id.</u>  The sentence, therefore, is substantively reasonable.

## <u>Conclusion</u>

For the foregoing reasons, we <u>affirm</u>.