# United States Court of Appeals
## For the First Circuit

No. 22-1660

UNITED STATES OF AMERICA,

Appellee,

v.

ESMERALDO BURGOS-BALBUENA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Montecalvo, Circuit Judges.

Jessica E. Earl, with whom Rachel Brill was on brief, for appellant.

Maarja T. Luhtaru, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

August 23, 2024

**LIPEZ**, <u>Circuit Judge</u>.  Following a high-speed boat chase off the coast of Puerto Rico, appellant Esmeraldo Burgos-Balbuena ("Burgos"), a citizen of the Dominican Republic, was arrested and charged with unlawfully reentering the United States after a previous removal.  He accepted responsibility and agreed to plead guilty.  As part of the plea deal, the parties agreed to jointly recommend an 18-month prison sentence.  Nevertheless, the court sentenced Burgos to 37 months' imprisonment, emphasizing Burgos's history of repeated unlawful entries and his dangerous evasion of arrest.  On appeal, Burgos argues that the government failed to comply with the plea bargain.  He also challenges his sentence on procedural and substantive grounds.  We affirm.

**I.**

**A. Factual Background**

Because we review a sentence arising from a guilty plea, we base our description of the facts on the plea agreement, the plea colloquy, the presentence investigation report ("PSR"), and the transcript of the sentencing hearing.  <u>See</u>, <u>e.g.</u>, <u>United States v. Diaz-Serrano</u>, 77 F.4th 41, 44 (1st Cir. 2023).

In December 2021, United States Customs and Border Protection ("CBP") agents, investigating reports of a suspicious vessel being launched from La Parguera, Puerto Rico, encountered Burgos and one other individual, Felix Guzman-Ramos ("Guzman"), in a boat matching the description provided.  Burgos and Guzman,

- 2 -

claiming to be fishing, failed to produce the boat's registration or their identification. When the CBP agents ordered the vessel to return to shore, Burgos and Guzman instead took off at high velocity.

A perilous chase ensued. Burgos's boat first headed for shallow water, compelling the CBP agents to turn back. After getting temporarily stuck, Burgos's boat came free and sped toward the CBP agents, forcing the agents to maneuver out of the way before once again giving chase. The CBP officers fired warning shots in the direction of the fleeing boat, to no avail. The agents then positioned their vessel in front of Burgos's boat and delivered three shots at its engine in an effort to disable it. In the course of this maneuver, Burgos's boat rammed into the CBP vessel. Burgos and Guzman again attempted to flee, with the CBP agents in pursuit. Burgos's boat deliberately rammed the CBP vessel a second time, causing an agent to fall into the vessel's helm. Eventually, the CBP agents again shot at the engine of Burgos's boat, bringing it to a complete stop. Burgos and Guzman then surrendered, and the CBP agents placed them under arrest due to their unlawful presence in the United States.

This episode was not Burgos's first unlawful entry into the United States. Indeed, the plea agreement describes six previous unlawful entries, stretching back to 2001. Although Burgos was not criminally charged each time, he was convicted in

2013 for unlawful entry, see 8 U.S.C. § 1325, sentenced to time served, and subsequently removed to the Dominican Republic.[1]  In 2018, Burgos was convicted for unlawful reentry, see 8 U.S.C. § 1326(a), and for "[b]ringing in and harboring certain [non-citizens]," id. § 1324.[2]  That time, Burgos was sentenced to 18 months' imprisonment, plus three years of supervised release, and was later ordered removed to the Dominican Republic.

## B. The Plea Agreement and PSR

Immediately following his arrest in the instant case, Burgos accepted responsibility, waived his right to a grand jury indictment, and consented to being charged by information for a single count of unlawful reentry.  See 8 U.S.C. § 1326(a), (b)(2). Thereafter, he entered into a plea agreement with the government that provided for a joint sentencing recommendation of 18 months' imprisonment, regardless of Burgos's criminal history category ("CHC") or the sentencing range calculated in the PSR.  The parties calculated a total offense level of 15,[3] but did not stipulate to

---

[1] Before this conviction, the Dominican Republic Navy informed the United States that Burgos is a well-known organizer of unlawful travel into the United States.

[2] After Burgos's initial arrest for this offense, he absconded while on bond and became a fugitive.  He was apprehended six months later while attempting to evade federal jurisdiction by returning to the Dominican Republic.

[3] The total offense level of 15 included a base offense level of eight, U.S.S.G. § 2L1.2(a); a four-level enhancement because the offense involved reentry, id. § 2L1.2(b)(1)(A); a six-level

a CHC.  The plea agreement specified that "any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach."  It otherwise imposed no duty on the United States and disclaimed any duty not specified by the agreement.

The PSR, by contrast, calculated a Guidelines sentencing range of 30 to 37 months' imprisonment, reflecting a total offense level of 17 and a CHC of III.  See U.S.S.G. ch. 5, pt. A (sentencing table).  The total offense level of 17 was based on the same factors as the plea agreement's calculation of 15, plus a two-level enhancement for creating a substantial risk of death or serious bodily injury to another person while evading arrest.  See id. § 3C1.2.  The CHC was based on six criminal history points:  one arising from Burgos's 2013 conviction, id. § 4A1.1(c); three from his 2018 conviction, id. § 4A1.1(a); and two because the instant offense occurred during a period of supervised release, id. § 4A1.1(d).[4]

_____

enhancement for Burgos's prior conviction for "[b]ringing in and harboring certain [non-citizens]," id. § 2L1.2(b)(3)(C); and a three-level reduction for acceptance of responsibility, id. § 3E1.1(a)-(b).

[4] As we discuss in greater detail below, the Guidelines applied during Burgos's sentencing hearing called for the addition of two criminal history points for offenses committed during a period of supervised release.  A subsequent 2023 amendment eliminated this provision, previously imposed under U.S.S.G. § 4A1.1(d).  Burgos does not dispute that even without these two additional points, he would still have four criminal history

## C. The Sentencing Hearing

At sentencing, Burgos's counsel requested an 18-month sentence, as recommended in the plea agreement. Counsel argued that this sentence was justified by Burgos's immediate admission of guilt, as well as mitigating circumstances, including Burgos's childhood poverty and continued economic challenges. Counsel also explained that Burgos had unlawfully entered the United States out of concern for several of his minor children residing in Puerto Rico. Burgos has twelve adult and minor children in total, some residing in the Dominican Republic and others in the United States. In addition, the agreed-upon sentence reflected Burgos's plans to start a business in the Dominican Republic, the difficult conditions of pre-sentence detention (such as being under 22-hour-a-day lockdown and having little communication with his family), and the possibility of future post-incarceration immigration detention. Speaking for himself, Burgos again accepted responsibility, reiterated several of counsel's points, and added that he hoped to return to the Dominican Republic as soon as possible to care for his mother, who was in poor health.

---

points, thus placing him in the same CHC of III. See U.S.S.G. ch. 5, pt. A (sentencing table) (stating that 4-6 criminal history points equate to a CHC of III).

The government stated that it "stands by its recommendation in the plea agreement." For the most part, the government simply agreed with the reasons offered by Burgos's counsel, rather than "repeat [them] for the record." The government emphasized, however, that Burgos "immediately accepted responsibility."

The district court accepted the PSR's adjusted base offense level of 17 and CHC of III. The court observed that Burgos is a "repeat offender" whose history of unlawful entry followed a similar pattern of conduct to the present case. In discussing the instant offense, the court emphasized that Burgos had created an "imminent threat to the safety of" the CBP agents who arrested him. Considering the totality of the circumstances, the district court found a sentence at the "upper end of the guideline range [to be] proper," sentencing Burgos to 37 months' imprisonment.

Burgos's counsel asked to "preserve an objection to substantive and procedural grounds and unreasonableness of the sentence," without further explanation. In this timely appeal, in addition to challenging the sentence as unreasonable, Burgos argues that the government failed to honor its obligations in the plea agreement.

**A. The Government's Adherence to the Plea Agreement**

We start with Burgos's contention that the government implicitly repudiated the plea agreement during the sentencing hearing. Burgos did not raise this argument in the district court, and he is thus entitled only to plain-error review of that claim on appeal. See United States v. Sierra-Jiménez, 93 F.4th 565, 570 (1st Cir. 2024). Under our "rigorous" plain-error standard, United States v. Ortiz, 741 F.3d 288, 293 (1st Cir. 2014), Burgos must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings," United States v. Cheveres-Morales, 83 F.4th 34, 43 (1st Cir. 2023) (alteration in original) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

"There is no doubt whatsoever that plea agreements play an 'important role . . . in our criminal justice system.'" United States v. Cortés-Lopéz, 101 F.4th 120, 127 (1st Cir. 2024) (omission in original) (quoting United States v. Frazier, 340 F.3d 5, 10 (1st Cir. 2003)). Accordingly, "we 'hold prosecutors to the most meticulous standards of promise and performance.'" United States v. Brown, 31 F.4th 39, 50 (1st Cir. 2022) (internal quotation marks omitted) (quoting United States v.

Marín-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017)). We often look to traditional contract principles to understand the parties' obligations under the plea bargain and to evaluate the government's performance. Id.; see also Puckett v. United States, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts.").

We have no "magic formula" for evaluating claims of breach. United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004). Rather, we look to the totality of the circumstances to assess whether the government's "overall conduct" is "reasonably consistent" with the promised sentencing recommendation, "rather than the reverse." United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992); see also Cortés-Lopéz, 101 F.4th at 128, 130 (stating that our analysis examines the "net effect of the government's behavior" to determine whether, on balance, it has "undermine[d] the benefit of the bargain" (internal quotation marks omitted) (quoting Frazier, 340 F.3d at 10)).

Burgos effectively concedes that the government complied with the express terms of the plea agreement. The agreement obliged the government only to recommend an 18-month prison sentence, and the government did exactly that. Burgos argues, nonetheless, that the government implicitly repudiated the plea agreement, invoking our precedent cautioning that the government may not merely pay "lip service" to the bargain, "reaffirm[ing] a promise to the defendant out of one side of [its] mouth" but

"subvert[ing] it out of the other side." United States v. Almonte-Nuñez, 771 F.3d 84, 91 (1st Cir. 2014). Such cases, however, typically involve the government subtly advocating for a greater-than-recommended sentence or implicitly undermining the sentence the parties agreed to recommend. See, e.g., United States v. Mojica-Ramos, 103 F.4th 844, 850 (1st Cir. 2024) (finding breach where the prosecutor labeled the defendant as "exception[ally]" dangerous and emphasized uncharged criminal conduct); Gonczy, 357 F.3d at 54 (finding breach where no "impartial observer [would] think that [the prosecutor] thought [the agreed-upon sentence] was . . . adequate" given her intense focus on the harm done by the defendant; Canada, 960 F.2d at 268-69 (finding breach where the prosecutor's comments in support of the recommended sentence were "grudging and apologetic" and the prosecutor emphasized facts supporting an enhancement not included in the plea agreement). Here, by contrast, the record contains no such wink or nod by the government seeking a harsher sentence than the one embraced by the agreement. The prosecutor simply affirmed the agreed-upon sentence, and, indeed, endorsed Burgos's arguments for it, while emphasizing his cooperation.

Undeterred, Burgos asserts that the government was obligated to do more in this instance. He first argues that the government had to justify the 18-month recommendation because it amounted to a downward variance from the sentencing range

calculated by the PSR.  Usually, however, absent an express statement in the plea deal, the government has "no affirmative obligation of either advocacy or explication," United States v. Lessard, 35 F.4th 37, 44 (1st Cir. 2022), even when recommending a downward variance, see United States v. Cruz-Agosto, 102 F.4th 20, 26 (1st Cir. 2024).  Here, the agreement expresses no such duty.

True, in Cortés-Lopéz we recognized a need for "minimal explanation" in the circumstances of that case.  101 F.4th at 132. There, we concluded that the government had breached the plea deal when, pursuant to that agreement, it recommended 24 months' probation whereas the Guidelines recommended 78-97 months' imprisonment.  Id. at 125-26.  Given that great disparity and the government's apparent agreement with a greater total offense level than the one contemplated by the plea deal,[5] "the district court was left to speculate about what rationale might reasonably support such a seemingly off-kilter, well-below guidelines recommendation."  Id. at 133.

---

[5] In Cortés-Lopéz, the defendant pleaded guilty to financial fraud, and the jointly recommended sentence contemplated by the plea agreement was premised on a loss amount of approximately $750,000.  101 F.4th at 124.  The PSR, however, calculated a loss amount of $5.4 million, yielding a higher total offense level. Id. at 125.  At the sentencing hearing, the prosecutor stated that the PSR was "correct" but that the government was "standing by its plea agreement recommendation."  Id.

This case is plainly distinguishable. Here, the government requested a comparatively modest downward variance, and, in any event, it did explain the rationale behind that recommendation. The prosecutor expressly agreed with Burgos's reasoning for a lower sentence and underscored that Burgos had immediately accepted responsibility, thereby saving judicial resources. The government thus went above and beyond its obligation to support the plea deal, affirmatively arguing in favor of the jointly recommended sentence.

Burgos also argues that the prosecutor was obligated to inform the court that Guzman, Burgos's codefendant, received a 21-month sentence from a different judge for engaging in the same conduct. According to Burgos, Guzman also pleaded guilty in exchange for a jointly recommended sentence of 18 months. Although Guzman also received a sentence higher than the recommendation, the increase was substantially less, and the sentence did not include the enhancement imposed on Burgos for endangering the lives of law enforcement. Burgos asserts that the prosecutor had a duty to bring this discrepancy to the court's attention and to justify the government's determination to forgo the endangerment enhancement in his plea agreement, particularly because she also represented the government at Guzman's sentencing. See, e.g., United States v. Romero, 906 F.3d 196, 211 (1st Cir. 2018) (stating that courts should minimize sentencing disparities between

"similarly situated . . . codefendants" (quoting United States v. Demers, 842 F.3d 8, 15 (1st Cir. 2016))).

Burgos, however, cites no authority for requiring the government to flag potential sentencing disparities to avoid breaching a plea agreement, absent any express duty to do so. Nonetheless, even assuming such a duty exists, we are unable to assess the claimed disparity because, aside from a copy of Guzman's plea deal, the record before us contains no information about Guzman's sentencing proceeding, including Guzman's criminal history and the district court's reasoning for his sentence. Absent any facts to support his claim that he and Guzman were similarly situated but disparately sentenced, Burgos's disparity-based claim necessarily fails. See United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017) (holding, in the context of a substantive challenge to a sentencing disparity between codefendants, that the defendant must "furnish the court with enough relevant information to permit a determination that he and his proposed comparators are similarly situated").

In sum, we reject Burgos's contention that the government implicitly repudiated the plea agreement. The government complied with the express terms of the agreement and did nothing to tacitly undermine it. Burgos's arguments that the government was obligated to do more in this case do not find support within our case law.

**B. The Sentence's Procedural and Substantive Reasonableness**

In assessing Burgos's arguments that the district court's sentence was unreasonable, we employ a "bifurcated inquiry." United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021). We first assure ourselves of the sentence's procedural reasonableness before turning to the sentence's substance. Id. Examples of procedural error include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Id. (quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020)). A sentence is substantively reasonable if the district court has "provided a 'plausible sentencing rationale' and reached a 'defensible result.'" Id. at 29 (quoting United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021)). In conducting our inquiry, "we owe deference to the sentencing court's exercise of informed discretion," id., and must view the sentence "in light of the totality of the circumstances," id. (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)).

**1. Procedural Reasonableness**

Burgos argues that the district court erred procedurally by failing to consider important parts of the record,

overemphasizing his criminal history, and improperly calculating the Guidelines range. At sentencing, Burgos's counsel gave no substance whatsoever to the procedural challenges Burgos now presses, asking only in the most generic possible terms to "preserve an objection [on] . . . procedural grounds." Such "[a] general objection to the procedural reasonableness of a sentence is not sufficient to preserve a specific challenge to any of the sentencing court's particularized findings" and thus we review this claim for plain error. United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017).[6]

### (a) Ignoring Important Facts

Burgos argues that the district court erred in its sentencing pronouncement because it did not specifically mention the plea agreement or Burgos's acceptance of responsibility, and the judge said little about mitigating factors.[7] But a sentencing

---

[6] The government argues that Burgos has compounded his default on appeal by failing to apply our four-part plain-error test, thus waiving the procedural claim altogether. "[W]e need not decide between waiver and forfeiture because '[w]here a defendant's claim would fail even if reviewed for plain error, we have often' simply proceeded to the merits." United States v. Grullon, 996 F.3d 21, 32 (1st Cir. 2021) (second alteration in original) (quoting United States v. Brake, 904 F.3d 97, 99 (1st Cir. 2018)). We adopt that approach here.

[7] The court did discuss Burgos's primary mitigating argument about growing up in poverty, finding this argument lacking because his history of unlawful entries began well into adulthood, and thus they were not, in the court's view, "prompted by having a deprived childhood."

court need not specifically rebut every argument that a defendant makes, so long as the record makes reasonably clear that the court considered the pertinent sentencing factors. See, e.g., United States v. Coplin-Benjamin, 79 F.4th 36, 43 (1st Cir. 2023). Likewise, a sentencing court is not "obliged to explain why it rejected the parties' joint recommendation" of a sentence, so long as it explains the sentence it ultimately selects. United States v. Bermúdez-Meléndez, 827 F.3d 160, 165 (1st Cir. 2016). Here, the court gave a lengthy explanation, emphasizing Burgos's past offenses and the dangerous boat chase.

At the outset of the hearing, moreover, the court stated that it had reviewed Burgos's plea agreement, which discussed Burgos's acceptance of responsibility, and the PSR, which discussed mitigating factors. Such statements by the sentencing court are entitled to deference, and "[w]e are particularly likely to credit" them "when [the court] imposes a sentence within the guidelines range, and when the particular fact the court allegedly neglected was a focus of argument prior to imposition of the sentence." United States v. Quinoñes-Otero, 869 F.3d 49, 53 (1st Cir. 2017) (citation omitted). The court imposed a sentence within the Guidelines range, and the discussion at the hearing consisted entirely of the plea agreement, Burgos's acceptance of responsibility, and his mitigating factors. We thus cannot conclude that the court overlooked these subjects.

### (b) Overemphasizing Criminal History

Burgos next argues that the court relied too heavily on his criminal history. Burgos's history of unlawful entry unquestionably weighed heavily in the court's sentencing determination, particularly because the instant offense closely resembled those prior offenses. Basing the sentence on this "statutorily authorized sentencing consideration[,]" however, "cannot constitute procedural error." United States v. Contreras-Delgado, 913 F.3d 232, 241 (1st Cir. 2019); see also 18 U.S.C. § 3553(a)(1). After all, the "decision to give greater weight to particular sentencing factors over others" lies "within the sound discretion of sentencing courts." United States v. Santini-Santiago, 846 F.3d 487, 492 (1st Cir. 2017) (quoting United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009)). "We are especially loath" to disturb the court's weighing of sentencing factors on plain-error review. Id. Accordingly, we reject Burgos's argument that the district court leaned too heavily on his criminal history.

### (c) Improperly Calculating Criminal History Points

Finally, Burgos contests the court's calculation of six criminal history points, yielding a CHC of III. Burgos objects to the addition of two points for committing the instant offense

during a period of supervised release.[8]  The PSR assigned these points because Burgos was under supervised release until March 4, 2021, and he admitted to entering the United States unlawfully on February 20, 2021.  Though the PSR thus treated February 20 as the date of the instant unlawful entry offense, Burgos disputes that he committed the offense on that date.

We need not determine whether the district court erred, as Burgos's argument fails our plain-error test regardless.  "[A] court does not commit plain error when it incorrectly calculates and applies a criminal history score that nonetheless results in the defendant being placed in the correct Criminal History Category."  United States v. Delgado-Sánchez, 849 F.3d 1, 12 (1st Cir. 2017).  Here, a calculation of four criminal history points instead of six would have produced the same CHC of III, and thus Burgos's Guidelines sentencing range would have been the same with

_____

[8] At the time, the Guidelines provided for two criminal history points "if the defendant committed the instant offense while under . . . supervised release."  U.S.S.G. § 4A1.1(d) (2021 ed.).  The Guidelines now call for only one point in such cases, and only if the defendant's criminal history points otherwise add up to seven or more.  Id. § 4A1.1(e).  Burgos argues that we should consider this revision in reviewing his sentence.  This argument clearly fails.  When evaluating the sentence's reasonableness, we may only consider post-sentencing Guidelines amendments that merely "clarify" the guideline provision, "without purporting substantive change."  United States v. Crudup, 375 F.3d 5, 8 (1st Cir. 2004).  The amendment Burgos references was clearly substantive.

either number of criminal history points.  See U.S.S.G. ch. 5, pt. A (sentencing table).

Nonetheless, Burgos argues that the sentencing court might have imposed a lesser sentence if he had fewer criminal history points, even within the same CHC.  That speculation, however, finds no support in the record.  The court explained that a top-of-the-Guidelines sentence was proper because of Burgos's prior unlawful entries and his endangerment of law enforcement. Those rationales would apply equally whether he had four or six criminal history points.

Concluding that none of Burgos's objections overcome our plain-error standard of review, we reject his contention that the sentence was procedurally unreasonable.

### 2. Substantive Reasonableness

Lastly, Burgos's attack on the substantive reasonableness of his sentence is easily dispatched.[9]  "Challenging a sentence as substantively unreasonable is a burdensome task in any case, and one that is even more burdensome where, as here, the

_____

[9] The government argues that Burgos has waived this claim because his arguments regarding substantive reasonableness are inscrutably intertwined with his arguments regarding procedural error.  While the government's waiver argument has some force, we once again elect to "jump[] to the 'simplest way to decide' [Burgos's] allegation[]," which, because it so clearly fails, is on the merits.  Grullon, 996 F.3d at 32 (quoting United States v. McCullock, 991 F.3d 313, 322 (1st Cir. 2021).

challenged sentence is within" the Guidelines range. United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011). As we have discussed, the district court offered a "plausible sentencing rationale" relating to Burgos's criminal history and endangerment of law enforcement. Flores-Quiñones, 985 F.3d at 133 (quoting United States v. Sayer, 916 F.3d 32, 39 (1st Cir. 2019)).

The court's justification was clearly defensible. Simply put, Burgos has not adduced any of the "powerful mitigating reasons" necessary to convince us that this within-Guidelines sentence falls outside the "universe of reasonable sentencing outcomes" for a repeat offender who, in the instant offense, placed federal agents in serious peril while evading arrest.[10] Clogston, 662 F.3d at 592-93 (quoting United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011)). We thus reject his substantive challenge.

* * *

For the reasons given, we affirm Burgos's sentence.

So ordered.

---

[10] We note that Burgos does not repeat, as part of his substantive unreasonableness challenge, his contention concerning an impermissible sentencing disparity between himself and his codefendant, Guzman.