# United States Court of Appeals
## For the First Circuit

No. 23-1911

UNITED STATES OF AMERICA,

Appellee,

v.

JADNEL FLORES-NATER, a/k/a Potro,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Kayatta, and Aframe,
Circuit Judges.

Lucas Anderson, with whom Rothman, Schneider, Soloway & Stern, LLP was on brief, for appellant.
Maarja T. Luhtaru, Assistant U.S. Attorney, with whom W. Stephen Muldrow, U.S. Attorney, Mariana E. Bauzá-Almonte, Assistant U.S. Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant U.S. Attorney, were on brief, for appellee.

July 14, 2025

**KAYATTA, Circuit Judge**. For the second time, Jadnel Flores-Nater challenges his thirty-year term of imprisonment. He argues that his sentence is both procedurally and substantively unreasonable, and that the government materially breached his plea agreement. Seeing merit in one of his procedural-unreasonableness arguments, we vacate and again remand for resentencing. Our reasoning follows.

## I.

We begin with the necessary factual and procedural background. First, we briefly rehearse the facts of the underlying offense, as described by this court in Flores-Nater's first appeal:

> On June 8, 2018, the defendant and four other members of a gang to which he belonged kidnapped [the victim] from a public housing complex. Each of the gang members -- including the defendant -- carried an assault rifle during the kidnapping. After forcibly placing the victim in a vehicle, the kidnappers drove to an area in Barrazas, Carolina, Puerto Rico. At some point in the process, the gang members told the defendant "Llegó tu día" (translated: "Your day has come") and handed him a revolver. Upon their arrival in Barrazas, the defendant got out of the car and proceeded to shoot [the victim] in the head. Several other gang members also shot him. [The victim] died.

United States v. Flores-Nater, 62 F.4th 652, 654 (1st Cir. 2023).

A grand jury charged Flores-Nater with one count of kidnapping resulting in death, 18 U.S.C. § 1201(a)(1); one count of using, carrying, brandishing, or discharging a firearm in

- 2 -

furtherance of a crime of violence, id. § 924(c)(1)(A)(iii); and one count of using, carrying, or discharging a firearm in furtherance of a crime of violence causing murder, id. § 924(j)(1). After negotiation, Flores-Nater entered a guilty plea to the crime of discharging a firearm in furtherance of a crime of violence. "In exchange, the government agreed to dismiss the two other counts against him, as well as all charges lodged in a separate but related case." Flores-Nater, 62 F.4th at 654. The plea agreement acknowledged that the U.S. Sentencing Guidelines recommended imprisonment of 120 months for the offense. Nonetheless, the parties agreed to recommend a sentence of 300 months -- a recommendation that the presentence investigation report acknowledged. As explained by Flores-Nater in his sentencing memorandum, the "unique case and surrounding circumstances . . . warranted request[ing] a sentence way above the statutory minimum."

In attempting to convince the district court why the proposed upwardly variant sentence should not be even higher, Flores-Nater's sentencing memorandum principally argued that the district court should consider Flores-Nater's youth in applying the sentencing factors set out by statute. See 18 U.S.C. § 3553(a)(1) (requiring the sentencing court to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant"). Wrote counsel:

- 3 -

The Supreme Court of the United States has long held that juveniles are per se less culpable than adults. Graham v. Florida, 560 U.S. 48 (2010). While Flores-Nater is not a juvenile, we should consider that he was barely 18 years old at the time of the offense; his eighteenth birthday was just 2 months before the offense conduct. There is no real difference between being 17 or 18 years old in terms of culpability and responsibility under this argument; "there is no bold line demarcating at what age a person reaches full maturity". Gall v. United States, 552 U.S. 38, 58 (2007) (internal citation omitted).

While age does not excuse behavior and age per se is ordinarily not a factor to consider at sentencing, "a sentencing court should account for age when inquiring into the conduct of a defendant". Id. "Immaturity at the time of the offense conduct is not an inconsequential consideration"; as such, it should not go unnoticed. Roper v. Simmons, 543 U.S. 551, 569 (2005). Furthermore, considerations of age and immaturity are relevant to a defendant's character under the sentencing factors in § 3553(a). Gall, 552 U.S. at 58 (citing Johnson v. Texas, 509 U.S. 350, 367 (1993)); Eddings v. Oklahoma, 455 U.S. 104, 115 (1982). Accordingly, Flores-Nater's age, immaturity, and vulnerability are important factors to consider at sentencing. (emphasis in original)

Counsel added that Flores-Nater's age-related immaturity was especially relevant in this case because it rendered him more susceptible to his codefendants who encouraged him to commit the crime. The memorandum also argued that the deterrent and retributive rationales for harsh punishment apply with less force to young adults. Finally, the memorandum argued that Flores-

- 4 -

Nater's substance abuse exacerbated the lack of "impulse control" associated with still-developing brains.

At sentencing, consistent with the plea agreement, both parties recommended a sentence of 300 months. In response, the district court stated facts related to Flores-Nater's background and crime, noted the parties' recommendation, and subsequently explained "that the sentence recommended by the parties does not reflect the seriousness of the offense, does not promote respect for the law, does not protect the public from further crimes by [Flores-Nater], and does not address the issues of deterrence and punishment." The district court then imposed a 360 month term of incarceration -- a twenty-year upward variance from the Guidelines sentence and five years above the parties' joint recommendation.

Flores-Nater appealed. The case was submitted on the briefs, and we vacated the sentence on the basis that it was substantively unreasonable. Flores-Nater, 62 F.4th at 655-57. We reasoned that the district court failed to articulate a plausible sentencing rationale by simply giving a "generic" statement that the recommended sentence was insufficient. Id. at 656. And although the underlying offense's "horrific" nature meant that "we c[ould] perhaps infer . . . what sparked the perceived need for an upward variance . . . , meaningful appellate review [was] frustrated" where we could not "say what specific factors shaped the full extent of the" sentence. Id. at 657. Nor did the district

- 5 -

court's "mere listing of the facts, without emphasis on any particular circumstance," make the rationale sufficient.  Id. (cleaned up).

On October 11, 2023, Flores-Nater appeared before the district court for resentencing.  Both parties again requested the agreed-upon sentence of 300 months.  Counsel for Flores-Nater also reiterated his main request -- that the court "take into consideration" the sentencing memorandum's "analysis of the relevant [§] 3553 factors regarding young offenders."  In addition, counsel noted that Flores-Nater had been in jail for about six years at that point, earned his GED, completed a money-management course, and had no issues in jail as of that time. Counsel also asked the court to consider that "similarly situated" codefendants were sentenced to twenty-five years and that Flores-Nater had taken responsibility for his offense by accepting a sentence "two-and-a-half times the . . . guideline sentence."

Subsequently, the district court announced it would sentence Flores-Nater to 360 months' imprisonment -- the same sentence the court handed down at Flores-Nater's original sentencing hearing.  As for its explanation, the court accepted the Guidelines calculation and stated that it had considered the sentencing factors listed in § 3553(a) and the defendant's sentencing memorandum, as well as our opinion in Flores-Nater's appeal, trial testimony by a codefendant, arguments from counsel,

and Flores-Nater's allocution. The court did not in any way acknowledge Flores-Nater's principal argument -- that his age of just over eighteen years at the time of the crime warranted a lower sentence. Indeed, the court mentioned Flores-Nater's age at the time of the offense only indirectly, stating that he was twenty-three at the time of the hearing and -- incorrectly -- that he was nineteen at the time of the offense (stating that the twenty-year-old victim was "just one year older than [the defendant], at the time of the offense"). The court also recounted the uncontested facts relating to Flores-Nater's participation in the kidnapping and murder, this time in more detail than at the previous sentencing hearing. For example, the court noted that "[o]ne can easily infer . . . that as the first shooter, [Flores-Nater] continued to shoot his revolver, and contributed to the ten shots [the victim] received to his head, shots that obliterated his face." Emphasizing that it was allowed to consider the "callousness and brutality" of the offense, as well as the fact that the other charged offenses were dropped, the court concluded the Guidelines sentence of 120 months was not appropriate.

The court went on to reject the parties' recommended sentence of 300 months as well, citing "[t]he high crime rate in Puerto Rico" as justification. It noted the "shifting standards" that we have set forth as to "the propriety of community-based considerations." However, the court concluded that it could take

into account community-based considerations as long as it detailed "a case-specific nexus between the offense of conviction (possession of illicit firearms) and the community-based consideration (a high rate of violent crime)." And it explained that, from 2016 to 2018, Puerto Rican homicide rates hovered around twenty per 100,000 inhabitants, whereas the rates in the other states within the First Circuit hovered around two per 100,000 inhabitants. The court then emphasized that the facts of Flores-Nater's offense -- the use of stolen vehicles, the threats used in the kidnapping, the remote location, and the murder of a rival gang member -- "represent[] a confluence of crime that regrettably is common in Puerto Rico." A sentence of 360 months was more appropriate, the court concluded, given the heightened "need for general and specific deterrence in an island plagued by crime."

At the conclusion of the hearing, the court asked counsel for both parties, "Anything else?" Both sides declined the invitation to raise anything else. The sentencing hearing concluded there. Flores-Nater timely appealed.

## II.

On appeal, Flores-Nater makes three arguments for vacatur of his sentence. First, he asserts that his sentence was both procedurally and substantively unreasonable because the court relied too much on the greater need for deterrence due to high crime rates in Puerto Rico. Second, he argues that his sentence

was procedurally unreasonable because the district court did not adequately explain its reasoning as to his primary mitigation argument. Lastly, he contends that we should vacate his sentence because the government has materially breached the plea agreement by arguing to affirm his sentence. We address each argument in turn, rejecting Flores-Nater's first and third arguments but accepting his second one. We thus vacate his sentence anew.

### A.

Flores-Nater first argues that the district court committed both procedural and substantive error when it based its upward variance on the greater need for deterrence in Puerto Rico. But he failed to raise that objection below, even when invited to raise any further concerns, making plain-error review appropriate. See United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014).[1]

Nothing approaching plain error occurred here. Of course, a sentencing court must give every defendant

---

[1] The government urges us to deem this challenge waived for failure to brief the prongs of plain-error review. But Flores-Nater does brief those prongs on reply, thereby distinguishing this case from those in which we have deemed challenges waived. See, e.g., United States v. Colón-De Jesús, 85 F.4th 15, 25 & n.14 (1st Cir. 2023) (deeming a challenge waived for failure to brief plain error where defendant "made no effort in his reply brief to argue plain error" "even after the government asserted in its opening brief that plain error review applied"); United States v. Pabon, 819 F.3d 26, 34 (1st Cir. 2016) ("Even after the government pointed [out that Pabon had not briefed plain error], Pabon still failed to address the . . . factors in his reply brief. Having failed to do so, Pabon has waived these claims.").

individualized consideration.  See Gall v. United States, 552 U.S. 38, 50 (2007).  Nevertheless, under our precedents, which our equally divided court left intact in United States v. Flores-González, 86 F.4th 399, 429 (1st Cir. 2023) (en banc) (opinion of Thompson, J.), a sentencing court properly considers a community's high crime rate so long as it connects that factor to the specific facts of the offense before it.  Compare United States v. Carrasquillo-Sánchez, 9 F.4th 56, 59-63 (1st Cir. 2021) (holding that the sentencing court failed to conduct individualized analysis where it explained its sentence solely in terms of the high rates of machine gun violence in Puerto Rico without reference to any specific characteristics of the offense or offender), and United States v. Rivera-Berríos, 968 F.3d 130, 135-37 (1st Cir. 2020) (similar), with United States v. Flores-Machicote, 706 F.3d 16, 23-24 (1st Cir. 2013) (holding that the sentencing court properly conducted an individualized assessment where it explained the need for greater deterrence due to Puerto Rico's high rates of violent crime while also "pa[ying] particular heed" to defendant's specific weapon and risk of recidivism).

Here, the district court contextualized the need for deterrence by highlighting the high murder rates in Puerto Rico as compared to other First Circuit jurisdictions.  And the court connected the sentence to the facts of Flores-Nater's offense -- particularly, the manner in which he committed the

- 10 -

murder. The court emphasized the fact that the abduction occurred in a stolen vehicle; that the victim was kidnapped with the use of threats to his life; that the killing took place in a remote location; and that the offense involved an effort "to eliminate a rival gang member." These facts, the district court explained, typified "crime that regrettably is common in Puerto Rico" and therefore warranted a higher sentence to increase general deterrence. Thus, Flores-Nater's contention that the district court did not ground his sentence in "case-specific factors" lacks merit. Flores-Machicote, 706 F.3d at 24.

Flores-Nater also argues that the sentencing court's reliance on high crime rates in Puerto Rico was substantively unreasonable. See Flores-Nater, 62 F.4th at 653 (explaining that a sentence is substantively reasonable if the court "articulate[s] a plausible sentencing rationale" and reaches "a defensible outcome"). Specifically, he suggests that the community-considerations rationale was "illogical" and "absurd[]" -- perhaps even cover for the sentencing court "to criticize and argue with this [c]ourt." But in criticizing the inclusion of Puerto Rico's elevated crime rates as a factor weighing in favor of greater general deterrence, Flores-Nater flies in the face of ample precedents establishing the propriety of such considerations. See Flores-González, 86 F.4th at 408 & n.1 (listing cases). And the

sentencing court's comments do not suggest that it responded in bad faith to our remand.

We therefore do not discern plain error in the district court's reliance on Puerto Rico's high crime rates as one factor pushing in favor of a greater upward variance.

**B.**

Flores-Nater next asserts that the district court procedurally erred by not explaining why it apparently rejected his arguments that the court should consider his age as a mitigating factor. We first address whether he preserved this challenge and then turn to the merits.

**1.**

The government invokes our preservation policy, arguing that Flores-Nater failed to preserve his objection to the district court's failure to explain its disposition of his argument based on his age at the time of the offense. We disagree.

To be sure, while Flores-Nater clearly advanced his age as the primary basis for avoiding a steeper upward departure, at the end of the second sentencing hearing he did not make the procedural objection now advanced on appeal -- that the district court failed to offer some express indication of whether and how it took his age into account. But we have previously described our "preservation policy" as "basically, putting the district court on notice of the error." United States v. Colón-Cordero, 91

- 12 -

F.4th 41, 50 (1st Cir. 2024). And we have no doubt that the district court was on notice of Flores-Nater's position that responding to his age-related arguments with silence was error: At the first hearing, Flores-Nater plainly referenced his arguments in the sentencing memorandum that the court need consider his age. But the court's explanation of the original sentence gave no indication of any such consideration. Flores-Nater therefore argued in his first appeal that the district court erred by "fail[ing] to consider his youth at the time of his offense." This court then remanded the case for resentencing precisely because the district court had failed to adequately explain its upwardly departing sentence. See Flores-Nater, 62 F.4th at 656 (holding that the district court failed to provide "meaningful insight into the court's reasoning").

On remand, Flores-Nater again asked the district court to consider his age-related arguments. And the court acknowledged that it was required to "make clear which specific facts of the case motivated its decision and why those facts led it to its decision." It also expressly referred to Flores-Nater's complaint to us about its failure to consider his age. But the court simply stated that our vacating of the first sentence was "not on the basis of his age." And in pronouncing its sentence, the court again offered no more explanation for its seeming disregard of Flores-Nater's age at the time of the offense, apparently because

- 13 -

it interpreted the remand as somehow blessing its rejection of age as a factor to be considered. This prompted Flores-Nater to file this second appeal, again challenging the lack of any indication that age had been considered. In sum, we are confident that the district court was put on notice that it need make clear whether and how the defendant's age played a role in the court's decision.

For the foregoing reasons, we conclude that Flores-Nater preserved his argument that the sentencing court failed to consider his mitigation arguments and therefore failed to explain adequately his sentence.

**2.**

Turning to the merits, we review a preserved sentencing challenge for reasonableness under an abuse-of-discretion standard. United States v. García-Pérez, 9 F.4th 48, 52 (1st Cir. 2021). "In applying the abuse of discretion standard, we review the [d]istrict [c]ourt's factual findings for clear error and its legal conclusions de novo." Id.

Flores-Nater contends that the district court inadequately explained its reasoning for the upward variance, by virtue of failing to mention anything about his principal argument that the court should consider his youth at the time of the offense

as a mitigating factor.[2]  Although a sentencing court need not "address every argument that a [party] advances," United States v. Rivera-Morales, 961 F.3d 1, 19 (1st Cir. 2020), it cannot "completely ignore[]" a party's central argument, Colón-Cordero, 91 F.4th at 55.

Thus, in Colón-Cordero, we held that, where a defendant gave "paramount emphasis" to the argument that the sentencing court should consider his intellectual disability as a mitigating factor, the court acted unreasonably in "completely ignor[ing]" that characteristic and the accompanying argument.  91 F.4th at 55.  Without any such mention, we deemed it "simply a bridge too far for us to say the district court meaningfully considered, let alone adequately explained," the defendant's mitigation argument. Id. at 56; see also United States v. Robles-Alvarez, 874 F.3d 46, 53 (1st Cir. 2017) (holding it procedurally unreasonable for the district court to "not even provide a cursory explanation for its rejection of" an argument that defendant "repeated[ly] attempt[ed] to bring . . . to the court's attention"); cf. Rita v. United States, 551 U.S. 338, 357 (2007) ("Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different

_____

    [2]  Unlike the government, we see no suggestion in Flores-Nater's briefing that his quarrel lies with the weight the district court placed on this factor.

sentence, . . . the judge will normally . . . explain why he has rejected those arguments.").

The government admits that Flores-Nater's age-related mitigation argument was his "dominant argument." As a result, the question framed by Colón-Cordero is whether the district court "sa[id] enough from which we c[an] fairly infer how it felt about" that argument. 91 F.4th at 56. And on this record, we cannot say that it did. To be sure, the district court indirectly indicated that it was aware of Flores-Nater's age at the time of the offense, albeit with some apparent confusion. But to the extent the government contends that these cursory references distinguish these facts from the total silence in Colón-Cordero, we are not persuaded. None of the sentencing court's comments even hinted at the content of Flores-Nater's arguments about his age -- for example, that the intense social pressure around him influenced his underdeveloped brain, thus reducing his culpability. We therefore cannot determine how those arguments may have affected the court's analysis. See id. at 54 ("We need to be able to understand the reasons of the district court and how it arrived at its sentencing pronouncement . . . .").

We can easily distinguish the government's other authorities. In United States v. Cortés-Medina, we saw no "reason to think that the district court overlooked" mitigating arguments, even though it did not explicitly address them, where they were

- 16 -

"vigorously pressed by defense counsel."  819 F.3d 566, 571 (1st Cir. 2016).  But there, we emphasized that the sentence was within the Guidelines range, and our decision did not suggest that the mitigating factors at issue were at the center of the defendant's arguments to the sentencing court.  Id. at 571 n.5.  Here, by contrast, the sentence not only dwarfed the Guidelines range, but it also substantially exceeded the parties' joint, above-Guidelines recommendation.  See Flores-Nater, 62 F.4th at 655 ("As the variance increases, so too does the district court's burden to offer a sound justification for the sentence imposed.").  And in United States v. Burgos-Balbuena, we upheld a sentence where the district court left unaddressed some of the defendant's mitigating arguments but "did discuss [the defendant's] primary mitigating argument about growing up in poverty, finding this argument lacking because his history of unlawful entries began well into adulthood." 113 F.4th 112, 121 n.7 (1st Cir. 2024).  In this case, by contrast, the sentencing court did not discuss Flores-Nater's primary mitigation arguments at all.

This failure is especially noteworthy because the youth of an offender is potentially an important factor in sentencing. See, e.g., Roper, 543 U.S. at 570 (explaining that "juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment" because of "the relevance of youth as a mitigating factor" (cleaned up)).

- 17 -

As a result, we conclude that the district court abused its discretion and committed procedural error by failing to explain at all whether and why it rejected Flores-Nater's argument concerning his age at the time of the offense.

**C.**

We next turn to Flores-Nater's argument that the government's defense on appeal of the sentence imposed below constitutes a material breach of the plea agreement. Because Flores-Nater raised this claim "at the earliest point when it was logical to do so," he sufficiently preserved it for our review. See United States v. Jurado-Nazario, 979 F.3d 60, 62–63 (1st Cir. 2020) (citation omitted). We review it de novo. Id. at 63.

"A plea agreement is interpreted according to normal contract principles." Id. Here, the plea agreement provided that "the parties will request a sentence of imprisonment of 300 months of imprisonment." It also stated that "[t]he parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement." A natural reading of these provisions suggests that they apply only to the parties' recommendations at sentencing below. See id. (holding that plea-agreement language requiring that "no further adjustments or departures to the defendant's total offense level shall be sought

- 18 -

by the parties" applied only "to the government's recommendation at sentencing, not to a future appeal").

Nor does the plea agreement expressly limit the government's right to defend a higher sentence on appeal -- in fact, it disclaims "the existence of any other terms and conditions not stated herein." By contrast, the plea agreement does expressly limit Flores-Nater's ability to appeal if the imposed sentence was 300 months or less. The lack of express limitation on the government, combined with a disclaimer and the presence of an express restriction on Flores-Nater, strengthen the inference that we should not read the agreement to bar the government from defending the district court's higher sentence on appeal. See United States v. Carbajal-Váldez, 874 F.3d 778, 786-87 (1st Cir. 2017) (holding that, in "[t]he absence of such a restriction" on the government, the government may "defend[] the district court's judgment . . . even though [the] plea agreement precluded it below from arguing the position that underpins the ruling").

Similarly, Flores-Nater's arguments about the impropriety of the government "repeatedly changing its position about important issues in the same case" have no support in the case law. See United States v. Hernández-Ramos, 906 F.3d 213, 215 (1st Cir. 2018) (rejecting an argument that it was "unbecoming" for the government to defend a variance on appeal after it

recommended a Guidelines sentence below); <u>United States</u> v. <u>Rivera-Gerena</u>, 112 F.4th 67, 73 n.2 (1st Cir. 2024) (similar).

As a result, we conclude that the government has not breached its plea agreement with Flores-Nater.

## III.

The bottom line to our holding reiterates our circuit precedent requiring that, when varying very much from a Guidelines sentence, a district court need at least cogently reveal whether and why it rejects a defendant's principal and substantial argument for greater leniency in the sentencing.

For the foregoing reasons, we **vacate** and **remand** for resentencing consistent with this opinion.